T.C. Memo. 1999-396

UNITED STATES TAX COURT

ESTATE OF CONSTANCE R. GRANT, DECEASED, P. WALKER
GRANT, JR., PERSONAL REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3818-98.                    Filed December 7, 1999.

P. Walker Grant, Jr. (personal representative), for peti-
tioner.

Elise F. Alair and Bradford A. Johnson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of

$15,248 in Federal estate tax (estate tax) with respect to the

estate of Constance R. Grant (the estate).  The issue remaining

for decision is whether the estate is entitled to deduct certain

amounts claimed under section 2053.[1]  We hold that it is to the extent stated herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, P. Walker Grant, Jr. (Mr. Grant), the son of decedent and a personal representative of the estate, resided in Shelburne, Vermont.[2]

On October 1, 1991, Ms. Grant, who was residing and domiciled in Montgomery County, Maryland, executed a declaration of trust (declaration of trust) under which she placed most of her real and personal property into a revocable trust known as the "CONSTANCE R. GRANT REVOCABLE TRUST" (Trust).  The declaration of trust provided in pertinent part:

> 2.  <u>Trust Estate</u>.  I hereby transfer, assign, convey and quit claim unto myself, as Trustee, and unto my successors in trust all of the property enumerated in Schedule A hereto attached, to have and to hold such property, and any other property which may be added to the Trust Estate pursuant to the provisions hereof, all of which property is hereinafter collectively referred to as the "Trust Estate".

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of the death of Constance R. Grant (decedent or Ms. Grant).  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Kathryn Lynn Grant Adams (Ms. Adams), the only other child of decedent, also served as a personal representative of the estate.  The record does not disclose where Ms. Adams resided at the time the petition was filed in this case.

3. <u>Trust and Successor Trustee</u>. So long as I am alive and competent, I shall serve as Trustee of the Trust Estate. In the event of the death or resignation of the Donor [decedent] as Trustee, or if the Donor's personal physician certifies in writing to the Donor's children, PRESTON WALKER GRANT, JR. and KATHRYN LYNN GRANT ADAMS, that, in his judgment, the Donor is physically or mentally unable to administer the Trust Estate, then PRESTON WALKER GRANT, JR., KATHRYN LYNN GRANT ADAMS and DONALD R. WILSON, shall serve as Successor Trustees. If the Donor's physician subsequently certifies in writing to the Successor Trustees that the donor has recovered and is currently mentally and physically able to serve as Trustee, the appointment of the Substitute Trustee shall terminate and the Donor shall be restored as Trustee.

\*     \*     \*     \*     \*     \*     \*

4. <u>Revocation</u>. I hereby reserve the right at any time, and from time to time, during my lifetime, to revoke the Trust Estate, in whole or in part, or to change, alter, modify or amend any of the terms and provisions hereof, and to withdraw all funds and other property, in whole or in part, without the consent of any other person.

\*     \*     \*     \*     \*     \*     \*

7. <u>Distribution of Income and Principal During My Lifetime</u>. During my lifetime, I shall have the power to withdraw any part or all of the net income and principal of the Trust. Any net income not withdrawn shall be added to the principal.

\*     \*     \*     \*     \*     \*     \*

8. <u>Distribution on Death</u>. Upon my death, the "Net Assets" (as hereinafter defined) of the Trust Estate shall be distributed by my Successor Trustee to my children PRESTON WALKER GRANT, JR. and KATHRYN LYNN ADAMS, in equal shares <u>per</u> <u>stirpes</u>, whereupon this trust shall terminate.

(a) My Successor Trustees, in their sole discretion, are authorized to distribute the Net Assets of the Trust Estate to my children in kind or in cash,

or partly in each.  If they elect to distribute wholly or partly in cash, they are authorized, in their sole discretion, to sell so much or all of the Net Assets of the Trust Estate as they deems [sic] appropriate for that purpose.

In distributing any tangible personal property of the Trust Estate to my children, I request my Successor Trustee to distribute such property to my children equally, but so far as practicable, in accordance with the preference of each child.  In the event of any disagreement as to the allocation of any item of tangible personal property, the allocation shall be made by the Successor Trustee other than PRESTON WALKER GRANT, JR. and KATHRYN LYNN GRANT ADAMS (the "Independent Trustee"). * * *

(b)  The term "Net Assets" shall mean the gross assets of the Trust Estate less any taxes or other expenses paid pursuant to the provisions of Paragraph 11 hereof.

\*        \*        \*        \*        \*        \*        \*

10.  <u>Powers Of Trustee</u>.  The Trustee and any Successor Trustee hereunder shall have the fiduciary powers enumerated in Section 15-102 of the Estates and Trusts Article, Annotated Code of Maryland, as amended from time to time, specifically including the right to employ appropriate assistance in the administration of the Trust, including accountants, attorneys and investment advisors.

In addition, the Trustee hereunder shall have the power to invest in common trust funds and uninsured money market funds; to invest and keep the Trust funds invested in such stocks, common or preferred, bonds, mortgages or other property as he/she may deem advisable or proper, without being restricted by any manner whatsoever as to the character of any investment by any statute, rule of law, or Court governing the investment of trust funds.  My Trustee is authorized to borrow funds and pledge trust property without Court approval, and to sell, lease, or otherwise convey any property of the Trust Estate on such terms and conditions as my Trustee may deem advisable, and to execute such deeds, mortgages, leases or other instruments as may be neces-

sary or desirable to effectuate the encumbrance or conveyance of any trust property.

\*         \*         \*         \*         \*         \*         \*

12. <u>Court Administration</u>.  It is my express intention that the Trust hereby created shall not be administered under the supervision of any Court. \* \* \*

13. <u>Maryland Law</u>.  This agreement has been executed by me in the State of Maryland, and all questions relating to its validity, construction and administration shall be determined in accordance with the laws of the State of Maryland.

14. <u>Compensation of Independent Trustee</u>.  I direct that DONALD R. WILSON or such other Independent Trustee who serves as Successor Trustee hereunder, shall receive a reasonable compensation from the Trust Estate for his or her services.

On October 1, 1991, the same date on which Ms. Grant executed the declaration of trust, she executed a last will and testament (decedent's will).  Decedent's will provided in pertinent part:

ITEM I

I direct my Personal Representatives, hereinafter named, to pay the expenses of my last illness, funeral and burial, in such amount as they may deem proper and without regard to any limitation in the applicable local law as to the amount of such expense.

ITEM II

All of the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate [sic] I give, devise and bequeath absolutely in fee simple unto my children, PRESTON WALKER GRANT, JR. and KATHRYN LYNN GRANT ADAMS, in equal shares <u>per</u> <u>stirpes</u>.

In distributing any tangible property hereunder to my children, such property shall be distributed

equally, but so far as practical, in accordance with the preference of each child.

ITEM III

I grant unto my Personal Representative [sic] all of the powers enumerated in the Estates and Trusts Article, Title 7, Section 401, Annotated Code of Maryland relating to powers granted to Personal Representatives.

ITEM IV

I appoint my children, PRESTON WALKER GRANT, JR. and KATHRYN LYNN GRANT ADAMS, as Personal Representatives. * * *

On April 2, 1994, Ms. Grant, who was still a resident and domiciliary of Maryland, died. After decedent's death, Mr. Grant, Ms. Adams, and Donald R. Wilson served as the successor trustees of the Trust.

Only $11,253 of decedent's gross estate passed to her children Mr. Grant and Ms. Adams outside of the Trust (non-Trust property). The non-Trust property consisted of $256 in cash and traveler's checks; life insurance valued at $1,025; $7,228 in a jointly owned money market mutual fund; and $2,744 of other miscellaneous property. The balance of decedent's gross estate, which had an aggregate value of $865,480, passed to her children pursuant to paragraph 8 of the declaration of trust (nonprobate property). The nonprobate property consisted of, inter alia, decedent's residence located at 13730 Deakins Lane, Germantown, Maryland (decedent's residence), stocks and bonds, five money

market mutual funds, a money market bank account, a checking bank account, jewelry, and household effects and furniture.

On or about January 4, 1995, Mr. Grant and Ms. Adams, as personal representatives of the estate, filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (estate tax return), which showed estate tax due of $60,118. In determining that amount of estate tax due, the estate tax return claimed a credit for state death taxes of $23,911. The Register of Wills, Montgomery County, Maryland, had determined that Maryland inheritance tax of $8,663.30 was due on $866,330 of the decedent's nonprobate assets consisting of $405,000 of real property and $461,330 of personal property.

The estate tax return reported as part of decedent's gross estate, inter alia, the following assets: decedent's residence valued as of the date of decedent's death pursuant to an appraisal at $405,000; stocks, including dividends, valued at $263,830; five money market mutual funds with total funds, including dividends, of $121,603; a checking bank account with funds of $31,274; a money market bank account with funds of $17,879; and a joint money market mutual fund with funds of $7,228. According to Schedule G of the estate tax return, the value of the decedent's nonprobate property was $865,480. That return also indicated that decedent did not have any debts and that there were no mortgages or liens on any property which she

owned.  The estate tax return claimed deductions for (1) $5,481 of Schedule J expenses ("Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims"), which included $1,865 of attorney's fees, and (2) $48,102 of Schedule L expenses ("Expenses Incurred in Administering Property Not Subject to Claims") (Schedule L).

None of the expenses claimed in Schedule L was approved by a Maryland court.  Those expenses consisted of:  (1) $11,250 and $5,625 of executors' fees paid to Mr. Grant and Ms. Adams, respectively;[3] (2) $840 of accountant's fees paid to Donald R. Wilson; (3) (a) $300 of appraisal fees to appraise decedent's residence, (b) $150 of appraisal fees to appraise certain of decedent's personal property, (c) $195 of appraisal fees to appraise decedent's jewelry, and (d) $240 of appraisal fees to appraise decedent's silverware; and (4) $29,502[4] of miscellaneous administration expenses (miscellaneous administration expenses). Schedule L contained the following descriptions of the items of miscellaneous administration expenses enumerated in that schedule as set forth below:

---

[3]The executors' fees were calculated by multiplying an hourly rate of $75 times (1) 150 hours in the case of Mr. Grant and (2) 75 hours in the case of Ms. Adams.

[4]The estate rounded the miscellaneous administration expenses claimed in Schedule L to the nearest dollar. For convenience, we shall do the same.

| Item Number | Description | Amount Deducted |
|:---:|:---|---:|
| 4 | Travel expenses to settle estate:<br>P. Walker Grant, Jr., personal representative<br>RFD 1 Box 3031, Killington VT 05751 | |
| | 4/11/94 Killington VT to Darnestown MD - 505 mi, $2.75 tolls | $149 |
| | 4/24-25/94 Darnestown MD to Killington VT via New Haven CT to broker for transfer of stocks - 534 mi, $13.85 tolls, Motel 6 New Haven 4/24 $42.55 | 212 |
| | 5/2/94 Killington VT to Darnestown MD - 520 mi, $2.75 tolls | 154 |
| | 6/5/94 Darnestown MD to Killington VT - 505 mi, $2.75 tolls | 149 |
| | 6/16/94 Killington VT to Darnestown MD - 505 mi, $2.75 tolls | 149 |
| | 7/14/94 Darnestown MD to Killington VT - 505 mi, $2.75 tolls | 149 |
| | 7/19/94 Killington VT to Darnestown MD - 525 mi, $4.65 tolls | 157 |
| | 8/8/94 Darnestown MD to Killington VT - 525 mi, $3.65 tolls | 156 |
| | 8/19/94 Killington VT to Darnestown MD - 525 mi, $4.65 tolls | 157 |
| | 9/22/94 Darnestown MD to Killington VT - 525 mi, $3.65 tolls | 156 |
| | 11/28/94 Killington VT to Darnestown MD - 525 mi, $4.65 tolls | 157 |
| | 12/11/94 Darnestown MD to Killington VT - 525 mi, $3.65 tolls | 156 |

| Item Number | Description | Amount Deducted |
|:---:|:---|---:|
| 5 | Travel expenses to settle estate: Kathryn Lynn Grant Adams, personal representative RR1 Box 6180 Plummers Ridge, Union (town of Milton) NH 03887 | |
| | 4/3/94 Milton NH to Darnestown MD - 540 mi, $10.85 tolls, $5.73 food on road | $173 |
| | 4/24/94 Darnestown MD to New Haven CT to broker for transfer of stocks - 318 mi, $13.85 tolls, Motel 6 New Haven $42.55 | 149 |
| | 4/25/94 New Haven CT to Darnestown MD - 318 mi, $8.85 tolls, $14.26 food | 115 |
| | 5/20/94 Darnestown MD to Milton NH - 540 mi, $14.85 tolls | 171 |
| | 5/28/94 Milton NH to Darnestown MD - 540 mi, $10.85 tolls | 167 |
| | 8/19/94 Darnestown MD to Milton NH - 540 mi, $14.85 tolls | 171 |
| | 8/25/94 Milton NH to Darnestown MD - 540 mi, $10.85 tolls | 167 |
| | 8/27/94 Darnestown MD to Milton NH - 540 mi, $14.85 tolls | 171 |
| | 9/1/94 Milton NH to Logan Airport, Boston - 85 mi, $1.00 toll | 26 |
| | Delta Airlines - Boston to Wash. DC to Boston | 60 |
| | meal at airport | 4 |
| | 9/5/94 meal at Washington airport | 10 |
| | parking at Logan Airport | 50 |
| | Logan Airport to Milton NH - 88 mi, $2.00 tolls | 28 |
| | 9/12/94 Milton NH to Darnestown MD - 540 mi, $10.85 tolls | 167 |
| | 10/25/94 Darnestown MD to Milton NH - 540 mi, $14.85 tolls | 171 |
| | 10/28/94 Milton NH to Darnestown MD - 549 mi, $9.45 tolls, $5.16 food | 174 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 6 | Geoffrey C. Adams, RR1 Box 6180 Plummers Ridge, Union NH 03887 - expenses of travel from home in Milton NH with helper, both to work on house | |
| | 6/10/94 to MD - 551 mi, $8.85 tolls, $29.73 meals | $198 |
| | 6/14/94 return - 470 mi, $13.85 tolls | 150 |
| | 6/24/94 to MD - 565 mi, $8.85 tolls, $32.92 meals | 206 |
| | 6/27/94 return - 455 mi, $13.85 tolls, $22.00 meals | 168 |
| | local miles in MD for supplies & dumping trash - 493 mi | 143 |
| 7 | Aetna Casualty Co., Hartford CT 10/21/94 Excess liability policy premium | 36 |
| 8 | Banner Glass, Rockville MD replace glass table top - 8/15 $97.56 | 98 |
| 9 | Barrons, Gaithersburg MD | 97 |
| | 6/28/94 siding - $13.23 | |
| | 7/6/94 shutters - $83.90 | |
| 10 | Bell Atlantic/C&P Telephone | 400 |
| | 4/8/94 bill $112.39   9/8/94 bill $32.89 | |
| | 5/8/94 bill $ 58.61  10/8/94 bill $25.74 | |
| | 6/8/94 bill $ 46.63  11/8/94 bill $25.13 | |
| | 7/8/94 bill $ 41.73  12/8/94 bill $25.48 | |
| | 8/8/94 bill $ 31.82 | |
| 11 | Bettar Appliance, Kensington MD 12/2/94 oven selector switch - $79.80 | 80 |
| 12 | Mark Canon, c/o Mr. & Mrs. Michael Canon RR 1 Box 33A Herricks Rd., Brookville ME 04617 6/11-15/94 labor & expenses:  yard work, window cleaning, trash hauling - 38¼ hr @ $8/hr, 11 trips to dump, misc. expenses | 389 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 13 | Steve Chorba, 314 Elm St., Milton, NH 03851 6/10-13/94 labor: yard work, window cleaning - 44 3/4 hr @ $8/hr, misc. expenses $400 6/24-27/94 labor: yard work - 35 hr @ $8/hr, misc. expenses $350 7/7/94 labor: unloading furniture, etc. in Milton NH $20 8/31/94 labor: storing furniture in Milton NH $20 | $790 |
| 14 | Christopher's Quince Orchard Hardware, Gaithersburg MD - various miscellaneous supplies for lawn, garden & landscaping; painting; tile repair & grouting; window repairs; flagstone & concrete cleaning and finishing; plumbing repair; nails, screws & other misc. hardware | 617 |

```
5/04/94-$ 13.11   7/01/94-$ 4.18    9/10/94-$ 8.49
5/16/94-$ 10.69   7/09/94-$10.67    9/13/94-$ 9.01
6/01/94-$ 14.60   7/12/94-$ 3.04    9/14/94-$ 9.75
6/18/94-$108.66   7/15/94-$ 3.46    9/15/94-$ 2.72
6/19/94-$103.90   7/16/94-$ 6.07    9/30/94-$24.19
6/19/94-$ 19.82   7/16/94-$ 6.49   10/01/94-$10.38
6/20/94-$ 46.18   7/24/94-$ 3.48   10/01/94-$ 4.19
6/25/94-$  9.76   7/30/94-$ 9.97   10/08/94-$ 3.77
6/25/94-$  2.09   8/01/94-$ 7.56   10/09/94-$ 8.39
6/25/94-$ 11.54   8/12/94-$19.40   10/14/94-$13.82
6/25/94-$ 32.72   9/04/94-$46.18   10/16/94-$ 8.39
6/29/94-$  5.01   9/04/94-$ 0.48    9/30/94-$ 8.39
                  9/09/94-$ 6.07
```

| Item Number | Description | Amount Deducted |
|---|---|---|
| 15 | Color Tile, Gaithersburg MD 7/6/94 grout saw - $10.49 8/23/94 additional blades $4.19 | 15 |
| 16 | CPI Photo, Lake Forest Mall, Gaithersburg MD 11/9/94 duplicates & enlargements of property-$54.39 | 54 |
| 17 | Crown Gasoline, Quince Orchard, Gaithersburg MD 5/26/94 gas for mowing - $5.00 | 5 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 18 | CVS Pharmacy, Quince Orchard, Gaithersburg MD<br>  8/9/94 floor protectors, shelf paper - $10.45<br>  8/11/94 floor protectors - $4.18<br>  10/9/94 floor protectors - $3.55 | $18 |
| 19 | Darnestown Office Products, Quince Orchard, Gaithersburg MD  10/8/94 tape - $1.88 | 2 |
| 20 | Darnestown Texaco, Darnestown MD<br>  6/12/94 gas for mowing & trimming - $6.34<br>  9/2/94  **?  ?     ?**   - $7.00 | 13 |
| 21 | Fisher Lumber (Leland L. Fisher, INC.), Rockville MD<br>  7/11/94 grouting supplies - $11.81 | 12 |
| 22 | Gaithersburg Ford-Kubota Tractor Co., Gaithersburg MD<br>  9/10/94 repair parts for mower - $5.04<br>  9/20/94  **?     ?     ?     ?**  - $4.19 | 9 |
| 23 | Gaithersburg Paint Center, Gaithersburg MD<br>  5/22/94 exterior window & trim paint & supplies-$31.40 | 31 |
| 24 | Ron Gilk, Germantown MD<br>  6/9/94 seal driveway - $336.00 | 336 |
| 25 | P. Walker Grant, Jr. reimbursement for expenses of moving personal property and furniture to heirs' homes in rented truck<br>  7/6-8/94 gas $141.25, tolls $15.10, motel $31.80<br>  9/5-7/94 gas $140.87, tolls $17.80 | 347 |
| 26 | Griffith-Steuart/Steuart Fuels (Div. of Griffith Consumers), Baltimore MD - heating oil<br>  3/28/94  $229.70   11/29/94  $ 76.86<br>  9/20/94  $101.53   12/21/94  $133.64<br>  11/7/94  $ 48.36 | 590 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 27 | Hechinger, Rockville & Gaithersburg MD<br>  5/21/94 paint supplies- $1.46<br>  6/26/94 carpentry supplies- $4.43<br>  8/4/94 garden rake- $10.49<br>  8/10/94 flagstone sealer- $17.09<br>  8/15/94 **?** **?** - $17.09<br>  10/12/94 grass seed- $23.08<br>  10/14/94 **?** **?** - $46.16 | $120 |
| 28 | Home Depot, Gaithersburg MD<br>  5/15/94 painting supplies, primer - $28.74<br>  5/31/94 driveway sealer - $29.67<br>  6/5/94 paint & carpentry supplies - $43.63<br>  6/26/94 carpentry material - $13.89<br>  7/11/94 electrical devices & trim, door &<br>        window hardware - $206.07<br>  7/23/94 trim & hardware items - $24.47<br>  8/30/94 marble cleaning & finish supplies-<br>            $20.76<br>  9/2/94 **?** **?** **?** **?** **?** -$9.81 | 377 |
| 29 | Lizz Huntzberry, Chewsville Rd., Smithburg MD<br>  5/31/94 lawn mowing & trimming - $195.00<br>  8/8/94 **?** **?** **?** **?** - $160.00 | 355 |
| 30 | Johnson's Flower & Garden Center, Quince Orchard, Gaithersburg MD<br>  7/30/94 plants & fertilizer | 72 |
| 31 | K-Mart, Kentlands Square, Gaithersburg MD<br>  8/9/94 Perlite soil additive - $4.77<br>  9/7/94 bath mats - $26.23<br>  9/19/94 vacuum cleaner bags - $4.19 | 35 |
| 32 | Kinko's, Gaithersburg MD<br>  10/12/94 copies of property plat - $1.84 | 2 |
| 33 | King & Sons, Burtonville MD<br>  6/3/94 pump & inspect septic tank -<br>      $170.00 | 170 |
| 34 | Lighting Designers, Rockville MD<br>  5/18/94 replacement front door & kitchen<br>      light fixtures - $142.59 | 143 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 35 | Lowe's, Kentlands Square, Gaithersburg MD supplies for garden, masonry, plumbing, painting<br>6/11/94-$ 4.28  8/07/94-$33.14   9/14/94-$12.80<br>8/03/94-$ 7.56  8/09/94-$12.42   9/15/94-$10.74<br>8/4/94 -$ 3.19  8/13/94-$ 6.19   9/17/94-$18.51<br>8/6/94 -$45.72  9/09/94-$ 4.27  10/14/94-$31.23<br>8/6/94 -$ 5.11  9/13/94-$ 7.85 | $203 |
| 36 | South T. Lynn, 13701 Deakins Lane<br>Germantown MD 20874<br> 5/31/94 Deakins Lane roadway maintenance-<br>                              $100.00<br>11/22/94   **?**    **?**    **?**      **?**      -<br>                              $100.00 | 200 |
| 37 | Meadows Farms, Germantown MD<br> 9/3/94 topsoil - $271.92 | 272 |
| 38 | Montgomery County, MD, Rockville MD<br> 4/22/94 additional death certificates -<br>         $72.00<br> 9/15/94 property taxes - $5,673.69 | 5,746 |
| 39 | Original Custom Interiors, Herald Harbor MD<br> 8/8/94 drapery alteration - $60.00 | 60 |
| 40 | Penn Auto, Gaithersburg MD<br> 5/24/94 fuses for mowing tractor - $1.57<br> 8/1/94 oil filler cap for tractor - $5.24 | 7 |
| 41 | J C Penney, Lake Forest Mall, Gaithersburg MD<br> 9/18/94 drapes and hardware - $36.23 | 36 |
| 42 | Pepco (Potomac Electric Power Co.), Washington DC<br> 2/23/94-3/25/94 $ 76.72    7/22/94-8/22/94 $224.68<br> 3/25/94-4/21/94 $ 63.20    8/22/94-9/20/94 $164.97<br> 4/21/94-5/19/94 $ 69.26   9/20/94-10/21/94 $112.34<br> 5/19/94-6/21/94 $356.24  10/21/94-11/18/94 $ 52.36<br> 6/21/94-7/22/94 $451.52 | 1,571 |
| 43 | Plumbing World, Gaithersburg MD<br> 9/9/94 plumbing repair materials - $5.46 | 5 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 44 | Polyzo's Painting Inc., Silver Spring MD<br>7/15/94 interior & exterior painting - $4,000.00<br>7/26/94 **?** **?** **?** **?** - $750.00 | $4,750 |
| 45 | Potomac Nursery, Potomac MD<br>9/4/94 plants - $180.74<br>9/13/94 grass seed - $15.74 | 196 |
| 46 | Potomac Valley Bank, branch at Potomac MD<br>4/11/94 safe deposit box rental - $45.00 | 45 |
| 47 | Pro-Graf 1-HR Photo, Gaithersburg MD<br>11/10/94 property photos developing & printing- $24.07<br>11/19/94 **?** **?** **?** **?** - $33.52 | 58 |
| 48 | Rent-A-Wreck, Rockville MD<br>7/8/94 truck rental, move effects to NH & VT- $318.33<br>9/7/94 **?** **?** **?** **?** **?** **?**- $300.93 | 619 |
| 49 | Safeway, Quince Orchard, Gaithersburg MD<br>7/4/94 packing materials - $13.61<br>8/10/94 plants - $6.28<br>11/5/94 light bulbs - $12.14 | 32 |
| 50 | Sears, Roebuck & Co., Lake Forest Mall, Gaithersburg MD<br>7/28/94 drapery traverse rod - $41.99 | 42 |
| 51 | Southern States Co-op Inc., Gaithersburg MD<br>11/25/94 fence repair material - $3.67 | 4 |
| 52 | Staples, Rockville MD<br>10/9/94 masking tape - $4.47 | 4 |

| Item Number | Description | Amount Deducted |
|---|---|---|
| 53 | Strosniders Hardware, Potomac MD<br>6/11/94 window & sash cleaning materials - $65.08<br>6/12/94 broken window repair materials - $36.04<br>6/13/94 grass trimmer line - $7.33 | $108 |
| 54 | Timberidge Farm, Mt. Airy MD<br>11/25/94 fence repair lumber - $5.00 | 5 |
| 55 | Universal Floors Inc., Gaithersburg MD<br>7/26/94 refinish hardwood floors -<br>$1,405.00<br>8/3/94 **?** **?** **?** -<br>$2,100.00 | 3,505 |
| 56 | USPS<br>4/8, 5/5 & 9/2/94 stamps - $40.60<br>5/28/94 postage - $2.75<br>10/7 & 10/19/94 postage - $1.73<br>11/10/94 postage | 46 |
| 57 | several local high school kids, full names & addresses unknown, for misc. labor<br>8/13/94 move furniture-2 for 3 hrs @ $7/hr-$42.00<br>9/4/94 yard work, windows-2 for day @ $50-$100.00 | 142 |
| 58 | P. Walker Grant, Jr. - reimbursement for local mileage incurred in settling estate<br>2101 mi @ $0.29/mi   PAID | 609 |
| 59 | Kathryn Lynn Grant Adams - reimbursement for local mileage incurred in settling estate<br>704 mi @ $0.29/mi   PAID | 204 |
| 60 | Move trailer of furniture to temporary storage in Milton NH after sale of house - 540 miles, estimate quoted @ $2/mi   ESTIMATED | 1,080 |

After decedent's death, the Trust filed its initial Form 1041, U.S. Income Tax Return for Estates and Trusts (Trust income tax return), for the period April 2, 1994 (the date of decedent's death) through December 31, 1994. The Trust income tax return showed, inter alia, in Schedule B ("Income Distribution Deduction") distributable net income totaling $3,086, which consisted of $3,006 of adjusted total income and $80 of adjusted tax-exempt interest, and "Other amounts paid, credited, or otherwise required to be distributed" of $314,968.

In December 1996, approximately two years and eight months after decedent's death, decedent's residence was sold for approximately $440,000.

Respondent issued a notice of deficiency (notice) with respect to decedent's estate. In the notice, respondent disallowed executors' fees of $16,875 and other expenses totaling $29,502, and allowed accountant's fees of $840 and appraisal fees totaling $885, that were claimed in Schedule L. In addition, respondent allowed as Schedule L expenses $2,203 of trustees' fees that were not claimed in Schedule L and $1,865 of attorney's fees that were claimed in Schedule J of the estate tax return.

## OPINION

The estate bears the burden of demonstrating error in respondent's determinations and in establishing its entitlement

to deduct under section 2053 the expenses claimed.  See Rule

142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

The estate contends that it is entitled to deduct under

section 2053(b) administration expenses consisting of executors'

fees totaling $16,875 and miscellaneous administration expenses

totaling $23,828.[5]  Respondent disagrees.

In determining the taxable estate, section 2053(b) allows

deductions of amounts representing expenses incurred in adminis-

tering property not subject to claims which is included in the

gross estate, to the same extent such expenses would be allowable

as deductions under section 2053(a) if such property were subject

to claims, and such amounts are paid before the expiration of the

period of limitation for assessment provided in section 6501.

Section 20.2053-8, Estate Tax Regs., provides in pertinent part

with respect to the deductibility of expenses in administering

property not subject to claims:

> Usually, these expenses are incurred in connection with
> the administration of a trust established by a decedent
> during his lifetime. * * *
>
> (b) These expenses may be allowed as deductions
> only to the extent that they would be allowed as deduc-
> tions under the first category [of deductions set forth
> in section 20.2053-1(a)(1), Estate Tax Regs.] if the
> property were subject to claims.  See §20.2053-3.   The

---

[5]On brief, the estate concedes that it is not entitled to
deduct $5,674 of real estate taxes that were claimed as part of
item 38 in Schedule L of the estate tax return because those
taxes accrued before the date of decedent's death.

- 20 -

> only expenses in administering property not subject to
> claims which are allowed as deductions are those occa-
> sioned by the decedent's death and incurred in settling
> the decedent's interest in the property or vesting good
> title to the property in the beneficiaries.  Expenses
> not coming within the description in the preceding
> sentence but incurred on behalf of the transferees are
> not deductible.
>
> (c) The principles set forth in paragraphs (b),
> (c), and (d) of § 20.2053-3 (relating to the allowance
> of executor's commissions, attorney's fees, and miscel-
> laneous administration expenses of the first category
> [of deductions set forth in section 20.2053-1(a)(1),
> Estate Tax Regs.]) are applied in determining the
> extent to which trustee's commissions, attorney's and
> accountant's fees, and miscellaneous administration
> expenses are allowed in connection with the administra-
> tion of property not subject to claims.

The only dispute between the parties under section 2053(b)

is whether the administration expenses claimed as deductions

would be allowable as deductions under section 2053(a)(2).

Section 2053(a)(2), relating to expenses incurred in administer-

ing property included in the gross estate and subject to claims,

allows a deduction from the value of the gross estate of "such

amounts * * * for administration expenses * * * as are allowable

by the laws of the jurisdiction * * * under which the estate is

being administered."  Section 20.2053-3(a), Estate Tax Regs.,

provides that amounts deductible as

> "administration expenses" of the first category * * *
> [under section 2053(a)(2)] are limited to such expenses
> as are actually and necessarily incurred in the admin-
> istration of the decedent's estate; that is, in the
> collection of assets, payment of debts, and distribu-
> tion of property to persons entitled to it. * * *
> Expenditures not essential to the proper settlement of

the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses. * * *

We turn first to the executors' fees totaling $16,875 which the estate contends are allowable as deductions under section 2053(a)(2) and therefore are deductible under section 2053(b). The executors' fees consisted of $11,250 paid to Mr. Grant and $5,625 paid to Ms. Adams which were claimed in Schedule L. In the notice, respondent disallowed those claimed executors' fees but allowed deductions under section 2053(b) for $2,203 of trustees' fees that were not claimed in Schedule L. On brief, respondent concedes that, in addition to the $2,203 of trustees' fees allowed in the notice, the estate is entitled to deduct under section 2053(b) trustees' fees of $3,517 and executors' fees of $990. Thus, respondent concedes that the estate is entitled to deduct under section 2053 a total of $6,710 of executors' fees and trustees' fees. Consequently, the amount of executors' fees claimed by the estate that remains in dispute is $10,165.

Section 20.2053-3(b), Estate Tax Regs., entitled "Executor's commissions", provides in pertinent part:

The executor * * * may deduct his commissions in such an amount as has actually been paid * * *. If the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed

* * * to the extent that all three of the following conditions are satisfied:

(i) The district director is reasonably satisfied that the commissions claimed will be paid;

(ii) The amount claimed as a deduction is within the amount allowable by the laws of the jurisdiction in which the estate is being administered; and

(iii) It is in accordance with the usually accepted practice in the jurisdiction to allow such an amount in estates of similar size and character.

In support of its position that it is entitled to deduct under section 2053(b) executors' fees totaling $16,875, the estate relies in part on Md. Code Ann., Est. & Trusts, sec. 7-601(b) (1998 Supp.) (Md. Code Ann., Est. & Trusts, sec. 7-601(b)). That section prescribes the maximum compensation payable to a personal representative of an estate as follows:

(b) Computation of compensation.--Unless the will provides a larger measure of compensation, upon petition filed in reasonable detail by the personal representative * * * the court may allow the commissions it considers appropriate. The commissions may not exceed those computed in accordance with the table in this subsection.

| If the property subject to administration is: | The commission may not exceed: |
|---|---|
| Not over $20,000 . . . . . . . . . . . . . . . . . . . | 9% |
| Over $20,000 . . . . . . . . | $1,800 plus 3.6% of the excess over $20,000 |

According to the estate, the maximum compensation, determined pursuant to Md. Code Ann., Est. & Trusts, sec. 7-601(b), of Mr. Grant and Ms. Adams, the personal representatives of dece-

dent's estate, was $32,237.[6]  The estate calculated that amount

as follows:

    9% x $20,000        = $1,800
    3.6% x $845,480[7]   = 30,437
              Total        32,237

The estate reasons that, because it claimed only $16,875 as

executors' fees for its personal representatives, and not the

maximum compensation of $32,237 that it believes it could have

claimed under Md. Code Ann., Est. & Trusts, sec. 7-601(b), the

full amount of such compensation claimed in Schedule L of the

estate tax return, i.e., $16,875, is reasonable and allowable by

Maryland law.  According to the estate, "Meeting the tests for

allowability by local law, it [the amount of executors' fees

claimed by the estate] is also allowable by federal law."

---

[6]The estate argues that the personal representatives of
decedent's estate also were entitled to a commission on the
proceeds of the sale of decedent's residence of up to 9% of those
proceeds.  In support of that argument, the estate apparently
relies on Md. Code Ann., Est. & Trusts, sec. 7-601(d)(1) (1991).
That provision was repealed, effective Jan. 1, 1992, and was not
in effect when decedent died on Apr. 2, 1994, or thereafter
during the administration of decedent's probate property.  See
Md. Code Ann., Est. & Trusts, sec. 7-601(d) (1998 Supp.).  In any
event, the provision on which the estate relies in Md. Code Ann.,
Est. & Trusts, sec. 7-601(d)(1) (1991) applied only to the sale
of real property subject to administration and, even as to such
real property, the personal representative was required to
petition a Maryland court and explain in reasonable detail why a
commission with respect to such a sale should have been allowed.

[7]The estate arrived at $845,480 by deducting $20,000 from
$865,480, i.e., the value of the nonprobate property reported in
Schedule G of the estate tax return.

We reject the estate's position that the personal represen-
tatives of decedent's estate would have been entitled to maximum
compensation under Md. Code Ann., Est. & Trusts, sec. 7-601(b) in
the amount of $32,237.  The maximum compensation of the personal
representative of an estate prescribed by that section is de-
signed to compensate such representative for all of the ordinary
work of administering an estate subject to administration, see
Lehman v. Kairys, 217 Md. 359, 364, 142 A.2d 546, 548 (1958);
Talbert v. Reeves, 211 Md. 275, 283, 127 A.2d 533, 538 (1956),
and is determined by reference to the amount of property subject
to administration.  The value of decedent's property as of the
date of her death that was subject to administration was no more
than $11,253.[8]  Thus, the maximum compensation of the estate's
personal representatives under Md. Code Ann., Est. & Trusts, sec.

---

[8]The value of decedent's non-Trust property as of the date
of decedent's death was $11,253.  Included within that non-Trust
property was a money market mutual fund account with a balance of
$7,228, which decedent and Ms. Adams jointly owned on the date of
decedent's death.  The parties do not address whether under
Maryland law that jointly owned money market mutual fund account
would be considered property subject to administration.  We
assume for purposes of this Opinion that the jointly owned money
market mutual fund account was property subject to administration
in Maryland, an assumption which favors the estate in calculating
the maximum compensation payable to a personal representative
under Md. Code Ann., Est. & Trusts, sec. 7-601(b).

7-601(b) would have been $1,012.77 ($11,253 x 9%), and not $32,237 as claimed by the estate.[9]

We also reject the estate's position that "Meeting the tests for allowability by local law, it [the amount of executors' fees claimed by the estate] is also allowable by federal law."  In determining the deductibility of administration expenses under section 2053(a)(2), the deductions claimed must be allowable not only by the State law under which the estate is administered but also by Federal law.  See Estate of Love v. Commissioner, 923 F.2d 335, 337 (4th Cir. 1991), affg. T.C. Memo. 1989-470; Estate of Smith v. Commissioner, 510 F.2d 479, 482-483 (2d Cir. 1975), affg. 57 T.C. 650 (1972); Estate of Posen v. Commissioner, 75 T.C. 355, 367 (1980).  To satisfy Federal law, the deductions claimed as administration expenses must satisfy the requirements of section 2053 and the regulations thereunder.

---

[9]Respondent concedes that the estate is entitled to deduct executors' fees determined under Md. Code Ann., Est. & Trusts, sec. 7-601(b).  However, respondent made a mathematical error in determining the value of decedent's non-Trust property and, consequently, made an error in calculating the maximum amount of executors' fees allowable under Md. Code Ann., Est. & Trusts, sec. 7-601(b).  Respondent calculated the value of decedent's non-Trust property to be $10,997 and the maximum compensation of a personal representative under Md. Code Ann., Est. & Trusts, sec. 7-601(b) to be $990 ($10,997 x 9%).  In fact, the value of decedent's non-Trust property was $11,253, consisting of $256 in cash and traveler's checks, life insurance valued at $1,025, $7,228 in a jointly owned money market mutual fund, and $2,744 of other miscellaneous property.

The estate contends that none of the time spent by Mr. Grant and Ms. Adams, which was used to determine the amount of executors' fees claimed in Schedule L, was for management of the Trust and that all of that time was spent to settle the estate. On the record before us, we disagree. Nothing in the record supports that contention. To the contrary, the record shows that the value of decedent's nonprobate property, as reported in Schedule G of the estate tax return, was $865,480, whereas the value of the non-Trust property was only $11,253. The record also establishes that virtually all of the miscellaneous administration expenses were incurred with respect to decedent's nonprobate property. Based on the record presented, we believe that most of the time spent by Mr. Grant and Ms. Adams must have related to that nonprobate property.

On the record before us, we find that the estate has failed to show that it is entitled to deduct as executors' fees under Md. Code Ann., Est. & Trusts, sec. 7-601(b) an amount greater than $1,012.77.[10]

---

[10]We note that although the estate stated in Schedule L that the executors' fees claimed were calculated on the basis of 150 hours spent by Mr. Grant at $75 an hour and 75 hours spent by Ms. Adams at $75 an hour, the record contains no explanation as to how the $75 hourly rate was determined. In addition, it is noteworthy that Mr. Grant and Ms. Adams, the personal representatives of the estate and two of the three successor trustees of the Trust, hired an attorney, an accountant, and appraisers who assisted them in administering decedent's estate. The fees for
(continued...)

The estate argues that, assuming arguendo that some of the
time spent by Mr. Grant and Ms. Adams were considered to have
been spent by them as successor trustees of the Trust, the estate
would be entitled under section 2053(b) to deduct trustees' fees
allowable under Md. Code Ann., Est. & Trusts, sec. 14-103(c) and
(e) (1991) (Md. Code Ann., Est. & Trusts, sec. 14-103(c) and (e))
in the amounts of $1,388 and $4,327, respectively.[11]  Those

---

[10](...continued)
those individuals employed by Mr. Grant and Ms. Adams that were
claimed as deductions in the estate tax return were allowed as
administration expenses by respondent.  Finally, we note that the
estate makes no claim that the personal representatives of
decedent's probate estate are entitled to extraordinary execu-
tors' fees under Maryland law.  The record contains no order of a
Maryland court allowing any such extraordinary fees, nor is there
any evidence in the record showing that an application for such
an order was ever made to a Maryland court.  Moreover, the
summary prepared by the estate's personal representatives that is
part of the record and that sets forth the nature of the various
tasks performed by them and the amount of time spent on such
tasks does not establish that any such tasks were extraordinary.
To the contrary, the tasks listed in that summary establish that
the work performed by the estate's personal representatives
constituted the ordinary work of administering decedent's probate
estate.  To illustrate, the tasks listed on the summary prepared
by the estate's personal representatives include the following:
Find, identify, and gather information, papers, and effects;
obtain death certificates; meet with lawyer and arrange appraisal
of personal effects; meet with accountant; collect and organize
papers including checks, bills, dividend records; effect stock
transfers; prepare small estate/personal representative papers;
start inventory; arrange for house appraisal; miscellaneous
administration; miscellaneous accounting; appraisal for jewelry
and silver; preparing for estate tax return.  On the record
before us, we find that the estate has failed to show that it is
entitled to any extraordinary executors' fees under Maryland law.

[11]We note that the declaration of trust provided that the
(continued...)

provisions of Maryland law, which relate to the calculation of

commissions for trustees, provide in pertinent part:

> (c) <u>Corpus commissions</u>.--Accounting from July 1, 1981, whether or not the trust was in existence at that time, commissions are payable at the end of each year upon the fair value of the corpus or principal held in trust at the end of each year as follows:
> (1) Four tenths of one percent on the first $250,000;
> (2) One fourth of one percent on the next $250,000;
> (3) Three twentieths of one percent on the next $500,000; and
> (4) One tenth of one percent upon any excess.
> * * *
>
>     *      *      *      *      *      *      *
>
> (e) <u>Final distribution</u>.--Upon the final distribution of any trust estate, or portion of it, an allowance is payable commensurate with the labor and responsibility involved in making the distribution, including the making of any division, the ascertainment of the parties entitled, the ascertainment and payment of taxes, and any necessary transfer of assets. The allowance is subject to revision or determination by any circuit court having jurisdiction. In the absence of special circumstances the allowance shall be equal to one half of one percent upon the fair value of the corpus distributed. [Md. Code Ann., Est. & Trusts, sec. 14-103(c), (e).]

Respondent concedes that the estate is entitled under

section 2053(b) to deduct trustees' commissions in the respective

---

[11](...continued)
independent successor trustee of the Trust, Donald R. Wilson, or such other independent successor trustee, was to receive "a reasonable compensation from the Trust Estate for his or her services." The declaration of trust did not provide for any compensation to be paid to Mr. Grant and Ms. Adams, who were to serve with Donald R. Wilson as successor trustees of the Trust.

amounts of $1,388 and $4,332 determined under Md. Code Ann., Est. & Trusts, sec. 14-103(c) and (e), or total trustees' commissions of $5,720 which includes the $2,203 of trustees' fees allowed by respondent in the notice. On the record before us, we find that the estate has failed to show that it is entitled under section 2053(b) to deduct trustees' commissions or fees determined under Md. Code Ann., Est. & Trusts, sec. 14-103(c) and (e) in excess of that total amount (i.e., the total of $1,388 and $4,332[12] under those respective provisions of Maryland law).

We turn now to the $23,828 of miscellaneous administration expenses that the estate claimed in Schedule L and that remain in dispute.[13] Those expenses may be broken down into the following broad categories of expenses, which were claimed for the purposes alleged in Schedule L and enumerated in that schedule as the following items of expense: (1) Items 4 and 5: travel expenses

---

[12]Respondent apparently calculated the amount of trustees' commissions allowable under Md. Code Ann., Est. & Trusts, sec. 14-103(e) as $4,332 by multiplying one-half of one percent times $866,330, which was the value of decedent's nonprobate assets as determined by the Register of Wills, Montgomery County, Maryland, in calculating inheritance tax due to Maryland. The estate calculated the amount of trustees' commissions allowable under Md. Code Ann., Est. & Trusts, sec. 14-103(e) as $4,327 by multiplying the value of decedent's nonprobate property that was included in the estate tax return in decedent's gross estate (i.e., $865,480) times one-half of one percent. We shall accept respondent's concession in the estate's favor that the estate is entitled under sec. 2053(b) to deduct $4,332 as trustees' commissions under Md. Code Ann., Est. & Trusts, sec. 14-103(e).

[13]See supra note 5.

of Mr. Grant and Ms. Adams for round trips from Vermont and New Hampshire, respectively, to Maryland "to settle estate"; (2) item 6: travel expenses of Geoffrey C. Adams "with helper," for round trips from New Hampshire to Maryland, "both to work on house"; (3) items 58 and 59: reimbursements at 29 cents per mile to Mr. Grant "for local mileage [2,101 miles]" and to Ms. Adams "for local mileage [704 miles]", "incurred in settling estate"; (4) items 10, 26, and 42: telephone bills with closing dates from April 8, 1994, through December 8, 1994; home heating fuel bills with closing dates from March 28, 1994, through December 21, 1994; and electric bills with closing dates from February 23, 1994, through November 18, 1994;[14] (5) items 8, 9, 11 through 15, 17 through 24, 27 through 31, 33 through 37, 39 through 41, 43 through 45, 49 through 55, and 57: various expenses incurred with respect to work done to decedent's residence and/or the effects therein, including replacing glass top table; siding; shutters; replacing oven switch; yard work; window cleaning; trash hauling; miscellaneous supplies for lawn, garden, and landscaping; tile repair and grouting; window repairs; flagstone and concrete cleaning and finishing; plumbing repairs; floor protectors; painting exterior windows and trim; sealing driveway;

---

[14]Respondent concedes that the estate is allowed to deduct $229 for home heating fuel and $140 for electricity, which amounts were incurred prior to decedent's death.

carpentry work; electrical work; lawn mowing; plants and fertil-
izer; replacing front door and kitchen light fixtures; supplies
for garden; masonry; plumbing; roadway maintenance; top soil;
drapery alteration; interior and exterior painting; plants and
grass seed; drapery traverse rod; window and sash cleaning
materials; and refinishing hardwood floors; (6) items 13, 25, 48,
49, 57, and 60: various expenses for moving furniture and other
household effects and personal property of decedent from Maryland
to New Hampshire and temporary storage of furniture in New
Hampshire after the sale of decedent's residence in December
1996; and (7) items 7, 16, 31, 32, 38, 46, 47, and 56: various
miscellaneous expenses, including expenses for "Excess liability
policy premium", "duplicates & enlargements of property"; bath
mats and vacuum cleaner bags; copies of property plat; additional
death certificates; safe deposit rental; developing and printing
property photos; and postage.

It is significant that, except for the descriptions of the
$23,828 of miscellaneous administration expenses at issue which
are set forth in Schedule L of the estate tax return, the record
is devoid of any evidence elaborating on those claimed expenses.
In the briefs that the estate filed in this case, the estate
makes various factual allegations about those expenses. Many of
those allegations are not supported by the record in this case

and consequently have been disregarded by the Court.  See Rule
143(b).

Section 20.2053-3(d), Estate Tax Regs., relating to deduc-
tions for miscellaneous administration expenses, provides in
pertinent part:

> (d) <u>Miscellaneous administration expenses</u>.
> (1) Miscellaneous administration expenses include such
> expenses as court costs, surrogates' fees, accountants'
> fees, appraisers' fees, clerk hire, etc.  Expenses
> necessarily incurred in preserving and distributing the
> estate are deductible, including the cost of storing or
> maintaining property of the estate, if it is impossible
> to effect immediate distribution to the beneficiaries.
> Expenses for preserving and caring for the property may
> not include outlays for additions or improvements; nor
> will such expenses be allowed for a longer period than
> the executor is reasonably required to retain the
> property.
>
> (2) Expenses for selling property of the estate
> are deductible if the sale is necessary in order to pay
> the decedent's debts, expenses of administration, or
> taxes, to preserve the estate, or to effect distribu-
> tion.  The phrase "expenses for selling property"
> includes brokerage fees and other expenses attending
> the sale, such as the fees of an auctioneer if it is
> reasonably necessary to employ one. * * *

On the record before us, we find that the estate has failed
to establish that the expenses claimed in Schedule L for the
travel of Mr. Grant and Ms. Adams from Vermont and New Hampshire,
respectively, to Maryland were necessarily incurred in preserving
and distributing the estate's assets.  In this connection, the
Attorney General of Maryland has determined upon at least two
occasions that incidental expenses incurred by nonresident

executors in the course of the ordinary business of administering
an estate in Maryland, including long distance telephone calls,
hotel expenses, and airplane tickets, will not be considered
expenses necessary to protect the estate if incurred only because
the executors are nonresidents.  See 59 Op. Atty. Gen. 613 (Md.
1974); 48 Op. Atty. Gen. 419 (Md. 1963).[15]

On the record before us, we further find that the estate has
failed to establish that the expenses claimed in Schedule L to
reimburse Mr. Grant and Ms. Adams for a total of 2,805 miles of
"local mileage incurred in settling estate" were necessarily

---

[15]Although since those opinions of the Attorney General of
Maryland were issued there have been some changes in Md. Code
Ann., Est. & Trusts, sec. 7-601, relating to compensation of the
personal representatives of an estate, none of those changes has
had any effect on those opinions.  Indeed, in 59 Op. Atty. Gen.
613 (Md. 1974), the Attorney General of Maryland cited with
approval 48 Op. Atty. Gen. 419 (Md. 1963) and 21 Op. Atty. Gen.
709 (Md. 1936) and indicated that those two latter opinions
"considered similar questions" to those being considered in 59
Op. Atty. Gen. 613 (Md. 1974).  In addition, in 59 Op. Atty. Gen.
613 (Md. 1974), the Attorney General stated:

> It is our opinion that the enactment of the pres-
> ent provisions of the Estates and Trusts Article was
> not intended to substantially change the law * * * and
> that the same result as reached in the above opinions
> [48 Op. Atty. Gen. 419 (Md. 1963) and 21 Op. Atty. Gen.
> 709 (Md. 1936)] should continue to prevail.

Nor did the changes to Md. Code Ann., Est. & Trusts, sec. 7-601
that were enacted after 59 Op. Atty. Gen. 613 (Md. 1974) was
issued and that were in effect on the date of decedent's death
and thereafter through the administration of the estate change
the law considered by that opinion of the Maryland Attorney
General.  See Md. Code Ann., Est. & Trusts, sec. 7-601 (1991 &
Supp. 1998).

incurred in preserving and distributing the estate's assets.  The record is devoid of any evidence explaining what Mr. Grant and Ms. Adams did when they traveled over 2,800 miles in Maryland.

The estate claims that virtually all of the other expenses at issue were incurred (1) "to maintain, or prevent some degradation in, the condition of" decedent's residence; (2) "for repairs to enhance the salability of" decedent's residence; and (3) "for selling" decedent's residence.[16]  We address first the estate's contention that the sale of decedent's residence was necessary in order to pay taxes because "the cash in the estate * * * [was] insufficient" to do so and that therefore the expenses for the last two purposes claimed satisfy section 20.2053-3(d)(2), Estate Tax Regs.  We disagree.  While decedent's estate might not have had sufficient cash to pay taxes, it had more than enough cash and liquid cash type assets to pay such taxes.  In this connection, the estate tax return reported as part of decedent's gross estate, inter alia, five money market mutual funds with total funds of $121,603; a checking bank account with funds of $31,274; and a money market bank account with funds of $17,879.  The estate tax return showed estate tax due of $60,118, claimed a

---

[16]Although not altogether clear from the record, it appears that, except for decedent's residence, most of decedent's nonprobate property was distributed by the end of 1994.

credit for State death taxes of $23,911, and claimed $53,583 of deductions.

On the record before us, we find that the estate had sufficient cash and liquid cash type assets to pay not only taxes but also all of its debts and expenses without selling decedent's residence. We therefore reject the estate's position that the sale of decedent's residence satisfies section 20.2053-3(d)(2), Estate Tax Regs., because that sale was necessary to pay taxes. We further find on the instant record that the estate has failed to show that any of the expenses which it claims were incurred "for repairs to enhance the salability of" decedent's residence[17] and "for selling" that residence[18] are deductible under section 2053.

Nonetheless, we believe on the record presented that it was not possible to distribute all of decedent's property, including decedent's residence and the household and other personal effects located at that residence, immediately after decedent's death. Consequently, we find that certain expenses incurred in maintain-

---

[17]On brief, the estate indicates that the expenses "for repairs to enhance the salability of" decedent's residence are set forth in Schedule L as items 6, 8, 9, 12, 13 (to the extent of $750), 14, 15, 19, 21, 23, 24, 27, 28, 30, 31, 34, 35, 37, 39, 41, 44, 45, 49 (to the extent of $18), 50, 52, 55, and 57.

[18]On brief, the estate indicates that the expenses "for selling" decedent's residence are set forth in Schedule L as items 16, 32, 33, and 47.

ing that residence, including certain utility expenses (i.e., telephone, home heating fuel, and electricity provided at decedent's residence[19]), and in distributing those assets are deductible under section 2053 and the regulations thereunder. See sec. 20.2053-3(d)(1), Estate Tax Regs. In addition, on the record before us, we find that certain expenses incurred for additional death certificates, rental of a safe deposit box, postage, and insurance on decedent's residence are deductible under those provisions.

Based on our examination of the entire record in this case, and bearing in mind that the estate has the burden of proving its entitlement under section 2053(b) to the miscellaneous administration expenses claimed, we find that the estate is entitled to deduct $3,100 as administration expenses.[20]

---

[19]Schedule L shows electric bills at decedent's residence for the period May 19, 1994, through Sept. 20, 1994, totaling $1,197.41. For example, the electric bill for the period May 19, 1994, through June 21, 1994, was $356.24, and the electric bill for the period June 21, 1994, through July 22, 1994, was $451.52. Although the periods to which those bills relate covered late spring and early summer 1994, there is no explanation in the record why those bills were so high. One possible explanation is that someone was living at the house during those periods. Without further explanation as to why it was necessary to incur such high electric bills during the period May 19, 1994, through Sept. 20, 1994, the Court will allow only $100 per month for each of the four months of electric bills covered by that period, or a total of $400. The Court will allow in full the amount of the remaining electric bills that were not conceded by respondent.

[20]The expenses allowed by the Court consist of all or cer-
(continued...)

To reflect the foregoing and the concessions of parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[20](...continued)
tain of the expenses claimed in Schedule L of the estate tax
return as items 7, 10, 11, 13, 17, 18, 20, 22, 25, 26, 29, 38,
40, 42, 43, 46, 48, 49, 51, 53, 54, 56, and 57.