LEHMAN, EXECUTOR *v.* KAIRYS ET AL.,
EXECUTORS, ET AL.

[No. 275, September Term, 1957.]

*Decided June 18, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William Saxon,* for appellant.

*Ward B. Coe, Jr.* and *Lewis A. Kann,* with whom were *Anderson, Barnes, Coe & Morrow; Eugene M. Feinblatt; Gordon, Feinblatt & Rothman,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

An executor who has been awarded the maximum statutory commission seeks to recover from the estate additional compensation for services rendered during the time of the settle-

ment of the estate as chairman of the board of a corporation, all of the stock of which was owned by his decedent. The equity court had assumed jurisdiction of the administration of the estate and the chancellor sustained demurrers by the legatees to the executor's petition asking the additional compensation. The appeal is from that order.

Robert Seff died in December of 1955 and by his will left one-third of his entire estate to his wife and the remaining two-thirds to his daughter, and appointed the appellant, J. Morton Lehman, a lawyer who had shared offices with him, executor. Mr. Seff long had been the sole stockholder of a corporation he had formed to deal in, manage, and hold real estate. The corporation owned some 300 investment properties, 700 installment contract properties, 80 mortgages, 339 ground rents, and 302 hypothecations. The net value of the outstanding stock of 153 shares was appraised at some $2,300,000, and the balance of the estate was appraised at some $80,000. Upon petition of the executor, consented to by the widow and the daughter, the Circuit Court in Baltimore City assumed jurisdiction of the estate in March 1956.

In May 1956 the chancellor with the consent of the widow and the daughter passed an order that (a) the executor vote all of the stock of the corporation for three directors, of whom the executor was to be one, and the president and the treasurer of the corporation the other two; (b) that the executor be elected chairman of the board of directors; and (c) that the by-laws of the corporation be amended as prayed by the parties in interest. The by-laws as so amended provided that the chairman of the board should have "full supervision of all of the activities and business of the corporation" and that subject to his approval, the president should "have general charge of the business". The president was to keep the chairman fully informed as to, and to consult him concerning, the business of the corporation. The president of the corporation was a son-in-law of the decedent and he and the treasurer had been officers of it and active in the management of its affairs for some time prior to the death of Mr. Seff.

In March of 1957 the chancellor fixed the commissions of the appellant as executor at 10% of the first $20,000 of the

estate and 2% of the balance, which is the maximum commissions allowed by Code, 1957, Art. 93, Sec. 6. In September 1957 the appellant filed a petition seeking additional compensation. The petition set forth the facts that have been recited and that the appellant "devoted his entire time from May 3, 1956 to August 22, 1957 to the supervision and management of the aforesaid company"; that its gross assets were over $5,000,000; that its net balance of income from May 3, 1956 to May 3, 1957 was $2,300,000; that in addition to his services as chairman of the board, the appellant attended over 160 settlements of properties sold by the corporation, performed all of the necessary legal matters pertaining to 81 foreclosures, attended to the redemption of 12 ground rents for the company, daily examined the check book and deposits of the company, attended to the refinancing of some of the properties of the company so as to produce the net sum of $450,000 in cash, and invested that sum in Government bonds to be used for the redemption of some of the stock held by the estate. The petition concluded that: "all of the aforesaid services rendered were above and beyond the duties of the herein Executor" and prayed that the court "fix the compensation for his aforesaid services."

Mrs. Seff had died in June of 1956. Her executors and the daughter separately demurred and answered the petition. The bases of their demurrers were substantially the same, namely, that any compensation to which the appellant may be entitled for services to the corporation was a matter to be determined by the board of directors of the corporation and beyond the scope of the court's jurisdiction, and that there was a non-joinder of a proper party defendant, the corporation, as well as that if the petitioner intended to claim compensation from the estate, he had received the maximum allowed by law and was attempting to profit by his office as executor beyond the compensation allowed by the State of Maryland, and any such profit would be improper and unlawful as a breach of trust. The chancellor sustained the demurrers, advising the appellant that if he wished to claim compensation against the corporation, he could amend his petition and make the corporation a party. This offer was

rejected and the demurrers were sustained without leave to amend.

We think it was right to sustain the demurrers. Code, 1957, Art. 93, Sec. 6, establishes as proper charges against the estate commissions set by the court in its discretion up to the maximum specified and, in addition, the personal representatives' "allowance for costs and extraordinary expenses (not personal) which the court may think proper to allow, laid out in the administration or distribution of the estate or in the recovery or security of any part thereof * * *." Such costs and extraordinary expenses are all above the maximum commissions that can be granted to personal representatives. Before 1937 the language quoted above served to sustain the allowance of counsel fees in proper cases (counsel fees specifically were made a part of expenses and costs by amendments beginning in 1937, Chap. 441, Acts of 1937). *American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 193, 199. The language literally would seem to contemplate only reimbursement for monies laid out to others for services—legal, accounting, or as to real estate, for example. Yet the practice consistently has been to allow compensation in addition to commissions to a personal representative who has rendered unusual or extraordinary services for which it would have been proper and appropriate to pay another, and this Court has recognized the propriety of the practice. In *Schloss v. Rives,* 162 Md. 346, 350, in approving compensation paid trustees for investing funds for the first time, the Court said that by analogy to "the statutes allowing commissions to executors * * * and the principles upon which those statutes were based, compensation should be allowed to a conventional trustee as a reasonable *indemnity for services rendered by him* * * *." (Emphasis supplied.) *Lee v. Lee,* 6 Gill & J. 316, 320, held that an executor could employ and pay from the funds of the estate as many overseers as were necessary for the completion and preservation of the crops on the farm of the decedent and that "If with more advantage to the estate, he acts in the capacity of an overseer, himself, it is competent for the Orphans' Court to allow him a reasonable compensation for his services [over and above his commis-

sions]." In *Edelen v. Edelen,* 11 Md. 415, 424, the Court approved payment to the administratrix for her services "in nursing servants while sick, and furnishing them with necessaries * * * ", saying that this item was "clearly within the principles decided in *Lee v. Lee, supra,* and was properly allowed." Judge Henderson for the Court, in *Talbert v. Reeves,* 211 Md. 275, 283, said of a claim for services by a personal representative in connection with the ice and taxi business of the decedent, rendered during administration: "In effect, the claim is for an allowance by the court for services rendered the estate. It has been said that carrying on a business is beyond the function of an administrator's office. *Willinger v. German Bk. of Balto.,* 132 Md. 237, 241. On the other hand, reimbursement for the reasonable expense of preserving assets has been held proper under some circumstances. *Bantz v. Bantz, supra,* p. 696. Cf. Code (1951), Art. 93, sec. 5. Of course, the allowance of commissions is designed to compensate an administrator for all of the ordinary work of administering. The Orphans' Court should deal with this claim in the light of the authorities cited."

In the case before us, neither Mr. Seff nor his estate had title to the real estate and other assets of the corporation, but owned the stock of the corporation which held title. When the executor sought leave to become chairman of the board of the corporation, he was not carrying on the business of the decedent, as that phrase generally is used. The corporation, an independent entity, would have continued to function through its board of directors and its officers as it had during the lifetime of Mr. Seff if the executor merely had held and distributed the stock. The executor might well have caused the corporation to have declared sufficient dividends or to have redeemed sufficient stock (as the federal estate tax statute contemplates and permits in a closely held organization), to furnish cash necessary to pay expenses, claims and taxes, and to distribute the stock remaining, one-third to the widow and two-thirds to the daughter, without changing the directors, officers or by-laws of the corporation. The fact that all of the stock was owned by one man, and after his death by his estate, would not be significant.

"Though all the stock of a corporation is owned by one person, the corporate entity will not be disregarded unless necessary to prevent fraud or establish a superior equity." *Brune, Maryland Corporation Law and Practice* (Rev. ed.), Sec. 372 at 437. "* * * the estate fiduciary is not required to administer the corporate business as if it were part of the estate * * *. By the same token, a corporate creditor may not ignore the corporate entity and instead seek payment of its claim from the estate fiduciary." *In re Greenberg's Estate,* 143 N. Y. S. 2d 226, 227. If the executor had thought that the best interests of the estate required a qualified executive to direct the affairs of the corporation and had utilized the ownership of the stock of the corporation to make that person chairman of the board, his compensation undoubtedly would have been paid, not by the estate, but by the corporation for whom the services were rendered. We think the same rule should apply where the executor serves as an official of a corporation, the controlling stock of which is owned by the estate. It is true that the services rendered to the corporation are designed to inure to the benefit of the owners of the corporate stock, but the services are not rendered to the estate as such nor directly in relation to assets of the estate. The services are rendered to the independent corporate entity in relation to real estate and other assets to which it holds title. The stock of the corporation which is owned by the estate reflects the effects of the management of the corporation and the utilization of its assets, but the services of the executor are not so directly expended "in the recovery or security" of any part of the estate as to justify an allowance for them from the estate to the executor above his maximum commissions. In final analysis, the essence of appellant's claim is that a stockholder of a corporation is to be held personally responsible for the compensation of the chairman of the board of directors of that corporation without an express agreement that he would be.

The answers of the appellees allege that the appellant had during Mr. Seff's lifetime an arrangement with the corporation for the performance of routine legal services, such as attending settlements for $15 per settlement, handling fore-

closures at $35 per foreclosure, and ground rent redemptions at $15 per redemption, and that his "relationship to the management and affairs of said Company was precisely the same subsequent to the death of Robert Seff as it was prior to his death" and that he has been paid some $4,000 for these legal services since Mr. Seff's death and is entitled to approximately the same amount for similar additional services. We were told at the argument that these allegations in the answers were substantially true. It would seem that the appellant has recognized that the corporation was the proper source of compensation for services he had rendered it, as far as legal matters are concerned, and we see no reason why any other services he performed for the corporation, if they properly are compensable, should not come from the pocketbook of the corporation rather than from that of the estate.

Equity normally would not have jurisdiction in a suit by a corporate officer against the corporation for compensation for services rendered. At the argument the appellees denied that the corporation owed the appellant anything, for managerial or executive services, but agreed that if the case were remanded they would, if the appellant so desired and made the corporation a party, submit the matter on the merits to the chancellor who was·familiar with all phases of the case from its inception, so that it might be determined as a matter of fact whether the appellant had rendered services to the corporation for which he was entitled to compensation from it. We think the proper, and an appropriate, way to accomplish the result suggested by the appellees, if the appellant so elects, is to have the same judge who sat as chancellor hear the question in a court of law, sitting without a jury.

It has been held that it is proper for an executor to derive compensation in addition to commissions by way of salary from a corporation owned or controlled by the estate under some circumstances. *In re Gerbereux' Will,* 266 N. Y. S. 134; *In re Saver's Estate,* 56 N. Y. S. 2d 623; *In re Berri,* 224 N. Y. S. 466. The appellees argue that the principles applied in *Mangels v. Tippett,* 167 Md. 290, 306, would prevent the appellant from using his ownership as executor of the stock of the corporation to place himself in a position

where he could be compensated. In the *Mangels* case, the beneficiaries did not know that the trustee had used his position to bring about a receipt of a salary and the Court distinguished *Dailey v. Wight,* 94 Md. 269, on the facts, in part because there had been evidence of ratification and acquiescence by the beneficiaries "which was stressed by the court in that case." In the case before us, the record reveals that the widow and the daughter consented formally to the appellant's becoming chairman of the board. The effect of that consent and the lengths to which it went are not revealed by the record, nor are the facts from which it could be determined whether there was agreement by the beneficiaries, express or implied, that compensation was to be paid by the corporation. These matters can be adequately determined if the claim against the corporation is pressed on remand.

> *Order affirmed, with costs to be paid by the appellant individually, and the case remanded for further proceedings not inconsistent with this opinion.*