T.C. Memo. 2005-128

UNITED STATES TAX COURT

ESTATE OF TIMOTHY J. TEHAN, DECEASED, TIMOTHY R. TEHAN, EXECUTOR,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17282-03.                    Filed May 31, 2005.

Michael F. Callahan, for petitioner.

William J. Gregg and Ann Welhaf, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of
$132,415 in Federal estate tax (estate tax) with respect to the
estate (estate) of Timothy J. Tehan (decedent).

The issues remaining for decision are:

(1)  Is certain property includible in decedent's gross

estate under section 2036(a)(1)?[1]  We hold that it is.

(2)  Is the estate entitled to deduct under section 2053 claimed personal representative's commissions in excess of the amount allowed by respondent?  We hold that it is to the extent stated herein.

FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

At the time the petition was filed, Timothy R. Tehan (Mr. Tehan), the son of decedent and the personal representative of the estate, resided in Bethesda, Maryland.

Decedent had eight children, including Mr. Tehan.  Decedent's other children are:  Ann M. Sanner, Patrick G. Tehan, Eileen T. Tehan, Daniel J. Tehan, Erin M. Boccia, Maureen R. Tehan, and William T. Tehan.

On March 28, 1990, decedent purchased condominium unit number 610N (decedent's residence) at 8101 Connecticut Avenue, Chevy Chase, Montgomery County, Maryland.  The purchase price of that condominium was $240,000.

On January 25, 1992, decedent, while residing in decedent's residence, executed a declaration of trust under which he placed $100 and certain life insurance policies into an irrevocable

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of decedent's death.  All Rule references are to the Tax Court Rules of Practice and Procedure.

trust known as the "Timothy J. Tehan Irrevocable Trust".

On November 5, 1997, in anticipation of the three deeds discussed below that decedent executed with respect to decedent's residence, decedent and decedent's children executed an agreement (November 5, 1997 agreement) concerning that residence, which was the only agreement with respect to decedent's use and occupancy of decedent's residence into which decedent and decedent's children entered. The November 5, 1997 agreement provided in pertinent part:

> **THIS AGREEMENT,** made this ___ day of _____, 1997,[2] by and between TIMOTHY J. TEHAN and TIMOTHY R. TEHAN, ANN M. SANNER, PATRICK G. TEHAN, EILEEN T. TEHAN, DANIEL J. TEHAN, ERIN M. BOCCIA, MAUREEN R. TEHAN and WILLIAM T. TEHAN (collectively the "Owners").

> \*      \*      \*      \*      \*      \*      \*

> NOW THEREFORE, in consideration of the mutual promises, covenants and agreements herein contained, the parties agree as follows:

> 1.  <u>Occupancy of Property and Payment of Expenses</u>. Timothy J. Tehan shall have the sole and exclusive right to the use and occupancy of the Property for such period of time as he desires. While he is occupying the Property, Timothy J. Tehan shall not pay any rent, but shall be solely responsible for the payment of any mortgage secured against the Property, the monthly condominium assessment, the annual real estate taxes and insurance premiums for the Property, and all costs or expenses in connection with the maintenance and repair of the Property. At such time as Timothy J. Tehan ceases to occupy the Property, such costs and expenses shall be divided between the owners of the Property, in accordance with their percentage

---

[2]As we found above, decedent and decedent's children executed the agreement on Nov. 5, 1997.

interest in the Property.

2. <u>Restrictions on Transfer of Interest</u>. Except as otherwise provided herein, no owner shall sell, hypothecate, pledge, assign or otherwise, transfer with or without consideration any part of his/her interest in the Property to any other person without first offering his/her interest first to Timothy J. Tehan, and secondly, to the other owners, in accordance with the provisions of this Paragraph 2:

(A) The owner desiring to sell, encumber or otherwise dispose of his/her interest in the Property (the "Selling Owner") shall submit a written offer to sell his or her interest to Timothy J. Tehan, setting forth the price and terms and conditions under which he/she is willing to sell his/her interest. For a period of ninety (90) days after receipt of such offer, Timothy J. Tehan shall have the right to accept said offer and to purchase the interest of the Selling Owner.

In the event Timothy J. Tehan does not accept the offer, then the other owners shall have the option, in proportion to their ownership interest, to purchase said interest by notifying the Selling Owner within thirty (30) days after the expiration of Timothy J. Tehan's option. If the owners accept the offer, they shall, at the same time, fix a closing date not more than sixty (60) days after the date of acceptance.

The purchase price shall be payable in cash on the closing date, unless the offer provides otherwise.

If Timothy J. Tehan and the owners all fail to accept the offer, then the Selling Owner shall be free, for a period of thirty (30) days thereafter, to solicit offers from any bona fide prospective pur- chasers.

If the Selling Owner receives a bona fide offer to purchase his/her interest at a price and on terms acceptable to the Selling Owner, he/she shall send a written copy of said offer to Timothy J. Tehan and the other owners and, for a period of ninety (90) days after receipt of the offer, Timothy J. Tehan and the other owners shall have the option to purchase the

interest of the Selling Owner at the same price and on the same terms and conditions as set forth in the offer of the bona fide prospective purchaser.  If Timothy J. Tehan or the other owners do not exercise the said option, the Selling Owner shall be free to sell his/her interest to the bona fide prospective purchaser provided:  (i) the purchase price and terms and conditions of sale shall not be different than set forth in the bona fide offer previously sent to Timothy J. Tehan and the other owners; (ii) if the sale is not consummated within thirty (30) days after the option of Timothy J. Tehan and the other owners expire, the interest shall once again be subject to the restrictions herein; and any transferee of the Selling Owner's interest shall automatically be bound by the terms of this Agreement and shall be required to join in, execute, acknowledge and deliver a copy of this Agreement, and he/she shall thereupon become an owner.

3.  Sale of Property.  At such time as Timothy J. Tehan ceases to occupy the Property, the Property shall be sold and the net proceeds of sale shall be allocated and distributed among the Owners in proportion to their percentage of ownership interest.  [Reproduced literally.]

On or about November 5, 1997, decedent executed a deed (first deed), which was recorded.  That deed provided in pertinent part:

**Witnesseth**, that for no consideration, the Grantor [decedent] does hereby grant and convey unto each of the Grantees [decedent's children], in fee simple and as tenants in common, an undivided 4.5% interest, in and to that piece or parcel of improved land [decedent's residence] * * *.

On or about January 2, 1998, decedent executed a second deed (second deed), which was recorded.  That deed provided in pertinent part:

**Witnesseth**, that for no consideration, the Grantor [decedent] does hereby grant and convey unto each of the Grantees [decedent's children], in fee simple and

as tenants in common, an undivided 4.5% interest, in and to that piece or parcel of improved land [decedent's residence] * * *.

* * * * * * *

The Grantor does furthermore confirm that, as of the date of execution of this instrument, ownership of the property hereinabove described is vested in the following entities, as tenants in common, with their percentage interest opposite each name:

| NAME | PERCENTAGE INTEREST |
|------|---------------------|
| TIMOTHY J. TEHAN | 28% |
| TIMOTHY R. TEHAN | 9% |
| ANN M. SANNER | 9% |
| PATRICK G. TEHAN | 9% |
| EILEEN T. TEHAN | 9% |
| DANIEL J. TEHAN | 9% |
| ERIN M. BOCCIA | 9% |
| MAUREEN R. TEHAN | 9% |
| WILLIAM T. TEHAN | 9% |

On or about March 22, 1999, decedent executed a third deed (third deed).[3] That deed provided in pertinent part:

**Witnesseth**, that for no consideration, the Grantor [decedent] does hereby grant and convey unto each of the Grantees [decedent's children], in fee simple and as tenants in common, an undivided 3.5% interest, in and to that piece or parcel of improved land [decedent's residence] * * *.

* * * * * * *

The Grantor does furthermore confirm that, as of the date of execution of this instrument, ownership of the property hereinabove described is vested in the following entities, as tenants in common, with their percentage interest opposite each name:

_____

[3]The record does not disclose whether the third deed was recorded.

|                        | PERCENTAGE |
|------------------------|------------|
| NAME                   | INTEREST   |
| TIMOTHY R. TEHAN       | 12.5%      |
| ANN M. SANNER          | 12.5%      |
| PATRICK G. TEHAN       | 12.5%      |
| EILEEN T. TEHAN        | 12.5%      |
| DANIEL J. TEHAN        | 12.5%      |
| ERIN M. BOCCIA         | 12.5%      |
| MAUREEN R. TEHAN       | 12.5%      |
| WILLIAM T. TEHAN       | 12.5%      |

At all times after decedent and decedent's children executed the first deed on November 5, 1997, until decedent died on May 17, 1999, decedent continued to treat decedent's residence as his own. Thus, pursuant to the terms of the November 5, 1997 agreement, until he died decedent continued to (1) use and occupy decedent's residence and (2) pay all of the monthly expenses with respect to that residence (monthly expenses), which totaled about $900 excluding utility expenses and between $1,000 and $1,100 including utility expenses[4] and which included condominium fees,[5] real property taxes on decedent's residence, homeowner's insurance, and expenses of maintaining that residence.[6] At no time

---

[4]Decedent's children would not have required decedent to vacate decedent's residence if he had failed to pay the monthly expenses.

[5]The record does not disclose the amount(s) of monthly condominium fees with respect to decedent's residence that decedent paid during the period Nov. 5, 1997, to the date of decedent's death. However, the record establishes that during the period Mar. 28, 1990, the date on which decedent purchased decedent's residence, until the date of his death, such condominium fees ranged from $396 to $514.

[6]There was no mortgage loan with respect to decedent's
(continued...)

did decedent need permission from his children in order to have guests at decedent's residence or to redecorate it.  At no time during decedent's life did any of decedent's children use or occupy decedent's residence or pay any of the monthly expenses with respect to that residence.  None of decedent's children attempted to sell his or her purported interest in decedent's residence before decedent died.  After decedent died, decedent's children sold that residence.

On August 17, 1998, decedent executed a last will and testament (decedent's will).  Decedent's will provided in pertinent part:

### ITEM I

I direct my Personal Representative, hereinafter named, to pay the expenses of my last illness and funeral as soon after my death as may be practicable in such amount as he may deem proper, and without regard to any limitation in the applicable local law as to the amount of such expenses.

### ITEM II

I direct that all inheritance, estate, legacy or other taxes which may be imposed with respect to my estate, whether or not passing under this will, shall be paid out of my residuary estate.

### ITEM III

All the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, I give,

---

[6](...continued)
residence.  Thus, decedent made no mortgage loan payments with respect to that residence during the period Nov. 5, 1997, until the date of his death.

devise and bequeath, absolutely and in fee simple, unto my children, TIMOTHY R. TEHAN, ANN M. SANNER, PATRICK G. TEHAN, EILEEN T. TEHAN, DANIEL J. TEHAN, ERIN M. BOCCIA, MAUREEN R. TEHAN and WILLIAM T. TEHAN, in equal shares, per stirpes.

ITEM IV

My Personal Representative shall have the powers and duties accorded to Personal Representatives under the Estates and Trusts Article of the Annotated Code of Maryland, Section 7-401, and any amendments thereto. In addition, and not by way of limitation of any such powers, my Personal Representative is authorized and empowered at any time, and from time to time, in his absolute discretion: (1) to hold and retain all or any portion of property received from my estate or from any other source, without regard to any law or will of court concerning diversification, risk or non-productivity; (2) to invest and reinvest (or leave temporarily uninvested) any funds or any other property, of any kind or nature, without regard to any law or rule of court prescribing investment obligation of fiduciaries; (3) to sell, exchange, partition or otherwise to deal with property, real or personal, at public or private sale, for such purposes and upon such terms as my Personal Representative may deem appropriate; (4) to borrow money and to secure payment of any amount so borrowed by mortgage of any real or personal property; (5) to divide and distribute any property hereunder, in kind or in money, or in part kind and part money.

ITEM V

I do hereby nominate, constitute and appoint my son, TIMOTHY R. TEHAN, Personal Representative of this, my Last Will and Testament. If my said son shall fail to qualify or cease to act, I appoint my son, PATRICK G. TEHAN, as Personal Representative in his place and stead.

I direct that my Personal Representative not be required to file a bond or enter other security in any jurisdiction for the faithful performance of his duties.

On May 17, 1999, decedent died while a resident and domicil-

iary of Maryland.  After decedent's death, pursuant to the
provisions of decedent's will, the Circuit Court for Montgomery
County, Maryland, sitting as the Orphans' Court (Orphans' Court),
appointed Mr. Tehan as the personal representative of decedent's
estate.

On the date of decedent's death, the fair rental value of
decedent's residence was between $1,600 and $2,200 per month.  On
the same date, the fair market value of that residence was
$275,000.

On or about August 17, 2000, Mr. Tehan filed Form 706,
United States Estate (and Generation-Skipping Transfer) Tax
Return (estate tax return), on behalf of the estate.  The estate
tax return listed as part of decedent's gross estate, inter alia,
the following types of assets and the following date-of-death
values for such types of assets:

| Assets | Value |
|---|---|
| Schedule A--Real Estate | $0 |
| Schedule B--Stocks and Bonds | 280,334 |
| Schedule C--Mortgages, Notes and Cash | 178,974 |
| Schedule D--Insurance on the Decedent's Life | 146,000 |
| Schedule E--Jointly Owned Property | 1,380 |
| Schedule F--Other Miscellaneous Property | 29,534 |
| Schedule G--Transfers During Decedent's Life | 0 |
| Schedule H--Powers of Appointment | 0 |
| Schedule I--Annuities | 1,027,210 |

Decedent's estate tax return claimed deductions of $79,993 in
Schedule J, Funeral Expenses and Expenses Incurred in Administer-
ing Property Subject to Claims, which included $32,000 of execu-

tor's commissions and $10,000 of attorney's fees.  Decedent's estate tax return did not claim any deductions in Schedule L, Expenses Incurred in Administering Property Not Subject to Claims.

On a date not disclosed by the record between May 5 and June 28, 2001, Mr. Tehan, in his capacity as the personal representative of the estate, and his attorney filed with the Orphans' Court a document entitled "Consent Petition for Allowance of Personal Representative's Commissions and Attorneys' Fees" (consent petition).  All of the beneficiaries of the estate consented to the granting of the consent petition.  In the consent petition, the personal representative and his attorney requested the Orphans' Court to allow personal representative commissions of $32,000 and attorney's fees of $7,500.  In the consent petition, the personal representative and his attorney claimed, inter alia, as follows:

> 8.  Aggregate commissions and attorney['s] fees in excess of the amount authorized by § 7-601 of the Estates and Trusts Article [of Maryland] is [sic] requested due to the extraordinary amount of time, diligence and expertise required of the Personal Representative in administering the substantially larger, but non-commissionable, "non-probate" assets of the estate of approximately $1.2 million, as opposed to the relatively modest amount of "probate assets".  Specifically, the personal representative estimates that of the more than 350 hours of time expended in administering his father's estate over the last 22 months, approximately 50% of this time was expended attending to issues arising from or related to the non-commissionable portion of the taxable estate.

On June 29, 2001, the Orphans' Court issued an order (June 29, 2001 order) approving, inter alia, the $32,000 of personal representative's commissions that Mr. Tehan requested in the consent petition.[7] Pursuant to that order, on October 15, 2004, the estate issued a $32,000 check to Mr. Tehan. Mr. Tehan deposited that check into his personal savings account on November 9, 2004, three days before the trial was held in this case.

In the notice of deficiency (notice) that respondent issued with respect to decedent's estate, respondent determined, inter alia, to include in decedent's gross estate under section 2036(a)(1) decedent's residence that respondent determined had a value of $310,000 on the date of decedent's death.[8] In the notice, respondent also determined, inter alia, to disallow as deductions (1) $20,822 of the $32,000 claimed as personal representative's commissions and (2) $2,500 of the $10,000 claimed as attorney's fees.[9]

---

[7]In the June 29, 2001 order, the Orphans' Court also approved the $7,500 of attorney's fees requested in the consent petition.

[8]In the stipulation for trial, respondent stipulated that the date-of-death value of decedent's residence was $275,000.

[9]In the stipulation for trial, the estate conceded, inter alia, respondent's determinations to increase decedent's taxable estate by the amounts of $10,000 and $1,896, respectively, for a note receivable and a State income tax refund. As a result of those concessions, on brief respondent concedes that the amount of personal representative's commissions that respondent determined in the notice to allow as a deduction under sec. 2053

(continued...)

- 13 -

## OPINION

We first address section 7491(a).  The parties agree that section 7491(a) is applicable in the instant case.  The parties disagree, however, over whether the burden of proof has shifted to respondent under section 7491(a) with respect to the issue presented under section 2036(a)(1).[10]  We need not and shall not address that disagreement.  That is because resolution of the issue presented under section 2036(a)(1) does not depend on who has the burden of proof.

### Section 2036(a)(1)

The only dispute between the parties under section 2036(a)(1)[11] is whether decedent retained for his life the

---

[9](...continued)
should be increased from $11,178 to $11,607.  At trial, the estate conceded respondent's determination in the notice to disallow $2,500 of the $10,000 of attorney's fees that the estate claimed as a deduction under sec. 2053.

[10]Petitioner does not claim that the burden of proof has shifted to respondent under sec. 7491(a) with respect to the issue presented under sec. 2053.

[11]Sec. 2036(a)(1) provides:

SEC. 2036.  TRANSFERS WITH RETAINED LIFE ESTATE.

(a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any
(continued...)

possession or enjoyment of decedent's residence within the meaning of that section. It is the estate's position that he did not. It is respondent's position that he did.

In support of the estate's position under section 2036(a)(1), the estate argues:

> Here, the decedent made three transfers. The transfers were for less than full consideration. In fact they were gratuitous; gifts to his children. However, they were not transfers under which he retained for his life the right to possession or enjoyment of the property transferred or the income from the property.
>
> The deeds were absolute transfers of fee interests in the property without reservation. The decedent did not retain under the transfer the right to possession or enjoyment of the condominium for his life. Until the third conveyance, March 22, 1999, the decedent was a tenant in common with his grantees. As a co-tenant he had the non-exclusive right to use and enjoy the property as did all the other co-tenants. See generally 20 Am.Jur.2d-Tenancy and Joint Ownership. Sec. 32, 41, 42.
>
> The decedent acquired the right to exclusive possession of the condominium by contract, the parties' Agreement regarding use and payment of expenses * * * (hereinafter "the Agreement"). Generally, all co-tenants are obligated to contribute to the expenses and upkeep of the property and a tenant who pays more than his pro-rata share is entitled to contribution from the other tenants. Kline v Kline, 581 A2d 1300, 85 Md. App 28, 49 (Md. App. 1991) cert. den. 587 A2d 246, 322 Md. 240. However, here the parties entered into an Agreement that provided for the decedent's exclusive use and occupancy of the condominium in return for payment of

---

[11](...continued)
period which does not in fact end before his death--

(1) the possession or enjoyment of, or the right to the income from, the property * * *

all of the expenses of the condominium. The grantees gave up their right to use and occupancy in return for the decedent's agreement to pay all of the expenses and not look to them for contribution. The Agreement was intended to cover only the period of time between the first conveyance and the last conveyance.

　　*　　　*　　　*　　　*　　　*　　　*　　　*

In Guynn v United States, 437 F.2d, 71-1 USTC Par. 12,742 (4th Cir. 1971), the decedent, an eighty year old woman, conveyed a residence to her daughter but remained in the residence without an express agreement that entitled her to do so, paid no rent to the grantee, and paid for improvements and certain expenses. The decedent's grantee, her daughter, testified that the decedent's remaining in the property was not discussed because it was understood by all involved that she would stay in the property until her death. The Fourth Circuit held that the property was included in the estate based on an implied agreement for a retained life estate.

In [Estate of] Barlow [v. Commissioner, 55 T.C. 666 (1971)], the decedent and wife conveyed farm property to their four children, simultaneously leasing the property back for a share of the crops that was found to be fair market rental. The property was not included in the taxable estate even though for four years the decedent did not actually pay the rent. The Court found that the outright transfer of the property to the children and the lease back were bona fide transactions. The forbearance from collecting rent was due to circumstances that arose later and were not contemplated by the parties at the time of the transaction.

The difference between Barlow and Guynn is that in Barlow, as in this case, the decedent really transferred the entire fee without retaining a life estate. Barlow, like the decedent here, was contractually obligated to pay for his continuing use of the property, no life estate having been reserved under the transfer. Guynn simply remained in possession without paying any quid pro quo because the parties so agreed. She retained a life estate so Section 2036 applied. There was no discussion or paperwork because none was needed. [Reproduced literally.]

In support of respondent's position under section 2036(a)(1), respondent argues:

A decedent's gross estate includes property interests with a retained life estate. I.R.C. § 2036(a). Inclusion is required where the decedent retained "possession or enjoyment" or right to income from property transferred for less than full consideration. I.R.C. §* * * 2036(a)(1)* * *. Here, the decedent retained the necessary "possession or enjoyment" of his personal residence–Unit #610N such that its value should be included in the decedent's gross estate. Even though the decedent and his eight children executed a series of conveyances transferring legal title to Unit #610N, no consideration was paid by the decedent's children for the conveyance. The decedent paid all of the expenses for Unit #610N before, during, and after the series of conveyances. The decedent did not pay any rent for the occupancy of Unit #610N before, during, and after the series of conveyances. His "possession or enjoyment" of Unit #610N was undisturbed during and after the series of transfers. He did not need the approval of his children to have guests or redecorate Unit #610N. It was uncontroverted at trial that even if the decedent had not paid expenses to maintain Unit #610N during and after the series of transfers, his children would not have sought to evict him from Unit #610N. Finally, as legal title of the decedent's eight children in Unit #610N increased progressively to 36%, then 72% and, finally, 100%, the decedent still paid all of the expenses to maintain Unit #610N without reflecting any change in ownership.

When all is said and done, the decedent retained complete "possession or enjoyment" over Unit #610N before, during, and after the series of transfers. As such, Code section 2036 mandates that the value of Unit #610N be included in the decedent's gross estate. * * *

Section 2036(a)(1) applies if there exists at the time of the transfer of property an agreement, either express or implied, that the transferor will retain possession or enjoyment of the property transferred, even if the transferor has no legally

enforceable right to do so.  Guynn v. United States, 437 F.2d
1148, 1150 (4th Cir. 1971); Estate of Rapelje v. Commissioner, 73
T.C. 82, 86 (1979); Estate of Honigman v. Commissioner, 66 T.C.
1080, 1082 (1976); Estate of Barlow v. Commissioner, 55 T.C. 666,
670 (1971).

In the case of real property, the terms "'possession' and
'enjoyment' [in section 2036(a)(1)] have been interpreted to mean
'the lifetime use of the property.'"  Estate of Maxwell v.
Commissioner, 3 F.3d 591, 593 (2d Cir. 1993) (quoting United
States v. Byrum, 408 U.S. 125, 147 (1972)), affg. 98 T.C. 594
(1992).

In the present case, there was an express agreement, namely
the November 5, 1997 agreement, which was executed on the same
date on which the first deed was executed, under which decedent
continued during his lifetime to (1) use and occupy, i.e.,
possess and enjoy, decedent's residence, (2) pay all of the
monthly expenses with respect to that residence,[12] and (3) other-
wise treat that residence as his own.  At no time did decedent
need permission from his children in order to have guests at
decedent's residence or to redecorate it.  At no time during
decedent's life did any of decedent's children use or occupy
decedent's residence or pay any of the monthly expenses with

_____

[12]Decedent's children would not have required decedent to
vacate decedent's residence if he had failed to pay the monthly
expenses.

respect to that residence. None of decedent's children attempted to sell his or her purported interest in decedent's residence before decedent died.[13]

This Court and other courts have found that facts such as those which we have found in the instant case surrounding the transfer of property by a decedent demonstrate that the decedent retained possession and enjoyment of the property transferred within the meaning of section 2036(a)(1). See, e.g., Estate of Maxwell v. Commissioner, supra at 594; Guynn v. United States, supra; Estate of Rapelje v. Commissioner, supra at 88; Estate of Honigman v. Commissioner, supra at 1083; Estate of Kerdolff v. Commissioner, 57 T.C. 643, 649 (1972).

The estate's reliance on Estate of Barlow v. Commissioner, supra, is misplaced. In Estate of Barlow, the decedent involved there and his wife gratuitously transferred a farm to their children and, under a contemporaneously executed lease, retained the possession and enjoyment of that farm in return for the payment by them of a "fair, customary rental". Id. at 667, 671. In the instant case, the November 5, 1997 agreement was not a lease agreement, and decedent did not agree under that agreement

_____

[13]After decedent died, decedent's children sold that residence.

to pay any rent,[14] let alone fair rental value, for his posses-
sion and enjoyment of decedent's residence.[15]

Based upon our examination of the entire record before us,
we find that decedent retained a life estate in decedent's
residence during the period November 5, 1997, until the date of
his death.  On that record, we further find that decedent re-
tained possession and enjoyment of decedent's residence within
the meaning of section 2036(a)(1).  On the record before us, we
find that the value of decedent's residence is includible in
decedent's gross estate under that section.[16]

Section 2053

The estate has the burden of establishing its entitlement to
deduct under section 2053 the claimed personal representative's

---

[14]Indeed, the November 5, 1997 agreement provides that
decedent "shall not pay any rent" while occupying decedent's
residence.

[15]Despite the purported decrease in decedent's ownership
interest in decedent's residence under the first deed, the second
deed, and the third deed, decedent paid all of the monthly
expenses with respect to that residence.

[16]For the first time on brief, the estate advances an alter-
native argument that "if inclusion [of decedent's residence] in
the taxable estate were to be based upon the decedent's remaining
in the property for six weeks when he had no contractual right to
do so, it should be limited to the 28% interest conveyed in
1999."  On the record before us, we reject the estate's alterna-
tive argument.  In finding that decedent retained possession and
enjoyment of decedent's residence within the meaning of sec.
2036(a)(1), we have not relied only on decedent's remaining in
that residence during the period starting on the date on which
the third deed was executed until the date of his death.

commissions.[17]

It is the estate's position that it is entitled to deduct under section 2053 personal representative's commissions of $32,000. It is respondent's position that the estate is entitled to deduct under section 2053 personal representative's commissions of $11,607.[18]

In support of its position under section 2053, the estate argues that, under section 20.2053-3(b), Estate Tax Regs.,[19] the June 29, 2001 order of the Orphans' Court, which allowed $32,000

---

[17]See supra note 10.

[18]The amount of personal representative's commissions claimed by the estate that remains in dispute is $20,393. See supra note 9.

[19]Sec. 20.2053-3(b), Estate Tax Regs., entitled "Executor's commissions", provides in pertinent part:

The executor * * * may deduct his commissions in such an amount as has actually been paid * * *. If the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed * * * to the extent that all three of the following conditions are satisfied:

(i) The district director is reasonably satisfied that the commissions claimed will be paid;

(ii) The amount claimed as a deduction is within the amount allowable by the laws of the jurisdiction in which the estate is being administered; and

(iii) It is in accordance with the usually accepted practice in the jurisdiction to allow such an amount in estates of similar size and character.

of personal representative's commissions,[20] is dispositive of the

issue presented under section 2053.  According to the estate:

> Section 20.2053-3(b), Estate Tax Regs. appears to
> provide, by negative implication, that a state court
> order is dispositive of the issue of the deductibility
> of personal representative's commissions.  It provides
> that "the executor may deduct has commissions in such
> amount as has actually been paid.  If the amount of the
> decree has not been fixed by order of the proper court,
> the deduction will be allowed*** to the extent that all
> three of the following conditions are satisfied...."
> Id.  The further requirements are applicable only to
> cases where personal representative's commissions are
> not approved by court order.  [Reproduced literally.]

In support of respondent's position under section 2053,

respondent argues that, under section 7-602 of Md. Code Ann.,

Est. & Trusts  (1999) (Md. Code Ann., Est. & Trusts, sec.

7-602),[21] the aggregate amount of personal representative's

-----

[20]The June 29, 2001 order of the Orphans' Court also allowed
$7,500 of attorney's fees.

[21]Sec. 7-602, Md. Code Ann., Est. & Trusts, provides in
pertinent part:

> (a) General.--An attorney is entitled to reason-
> able compensation for legal services rendered by him to
> the estate and/or the personal representative.

> (b) Petition.--Upon the filing of a petition in
> reasonable detail by the personal representative or the
> attorney, the court may allow a counsel fee to an
> attorney employed by the personal representative for
> legal services.  The compensation shall be fair and
> reasonable in the light of all the circumstances to be
> considered in fixing the fee of an attorney.

> (c) Considered with commissions.--If the court
> shall allow a counsel fee to one or more attorneys, it
> shall take into consideration in making its determina-

(continued...)

commissions and attorney's fees allowable as a deduction is limited to the amount determined under section 7-601(b) of Md. Code Ann., Est. & Trusts (1999) (Md. Code Ann., Est. & Trusts, sec. 7-601(b)) (quoted and discussed below).  Consequently, according to respondent, the estate is entitled to deduct under section 2053 only $11,607 of personal representative's commissions.

In determining the taxable estate, section 2053(a)(2), relating to expenses incurred in administering property that is included in the gross estate and subject to claims, allows a deduction from the value of the gross estate of "such amounts * * * for administration expenses * * * as are allowable by the laws of the jurisdiction * * * under which the estate is being administered."  Section 20.2053-3, Estate Tax Regs., provides in pertinent part:

> (a) <u>In general</u>.  The amounts deductible from a decedent's gross estate as "administration expenses" of the first category (see paragraphs (a) and (c) of § 20.2053-1) are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. * * * Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions.

---

[21](...continued)
tion, what would be a fair and reasonable total charge for the cost of administering the estate under this article, and it shall not allow aggregate compensation in excess of that figure.

Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses. * * *

Section 2053(b) allows deductions of amounts representing expenses incurred in administering property that is included in the gross estate and not subject to claims to the same extent such expenses would be allowable as deductions under section 2053(a)(2) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501. Section 20.2053-8, Estate Tax Regs., provides in pertinent part:

Usually, these expenses [expenses in administering property not subject to claims] are incurred in connection with the administration of a trust established by a decedent during his lifetime. They may also be incurred in connection with the collection of other assets or the transfer or clearance of title to other property included in a decedent's gross estate for estate tax purposes but not included in his probate estate.

(b) These expenses may be allowed as deductions only to the extent that they would be allowed as deductions under the first category [of deductions set forth in section 20.2053-1(a)(1), Estate Tax Regs.] if the property were subject to claims. See § 20.2053-3. The only expenses in administering property not subject to claims which are allowed as deductions are those occasioned by the decedent's death and incurred in settling the decedent's interest in the property or vesting good title to the property in the beneficiaries. Expenses not coming within the description in the preceding sentence but incurred on behalf of the transferees are not deductible.

(c) The principles set forth in paragraphs (b), (c), and (d) of § 20.2053-3 (relating to the allowance of executor's commissions, attorney's fees, and miscellaneous administration expenses of the first category

[of deductions set forth in section 20.2053-1(a)(1), Estate Tax Regs.]) are applied in determining the extent to which trustee's commissions, attorney's and accountant's fees, and miscellaneous administration expenses are allowed in connection with the administration of property not subject to claims.

Section 20.2053-1(b)(2), Estate Tax Regs., relating to the effect of a local court decree on expenses claimed under section 2053(a) and (b) provides in pertinent part:

> (2) Effect of court decree.  The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. * * * If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits.  It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if it is at variance with the law of the State; as, for example, an allowance made to an executor in excess of that prescribed by statute. * * *

In determining the deductibility of expenses under section 2053, the deductions claimed must be allowable not only by the State law under which the estate is administered but also by Federal law.  See Estate of Grant v. Commissioner, 294 F.3d 352, 354 (2d Cir. 2002), affg. T.C. Memo. 1999-396; Estate of Love v. Commissioner, 923 F.2d 335, 337 (4th Cir. 1991), affg. T.C. Memo. 1989-470; Estate of Posen v. Commissioner, 75 T.C. 355, 367 (1980).

We reject the estate's argument that the June 29, 2001 order

of the Orphans' Court is "dispositive of the issue of the deductibility of personal representative's commissions."  The exercise of the discretion of the Orphans' Court of Maryland to determine the amount of commissions allowable to a personal representative is limited by Maryland statutes to the amounts prescribed in such statutes.  <u>Am. Jewish Joint Distrib. Comm. v. Eisenberg</u>, 70 A.2d 40, 41 (Md. 1949); <u>Cearfoss v. Snyder</u>, 35 A.2d 235, 237 (Md. 1943).

Section 7-601(b), Md. Code Ann., Est. & Trusts, prescribes the computation of the compensation allowable to the personal representative of an estate as follows:

> (b) Computation of compensation.--Unless the will provides a larger measure of compensation, upon petition filed in reasonable detail by the personal representative * * * the court may allow the commissions it considers appropriate.  The commissions may not exceed those computed in accordance with the table in this subsection.

| If the property subject to administration is: | The commission may not exceed: |
| --- | --- |
| Not over $20,000 | 9% |
| Over $20,000 | $1,800 plus 3.6% of the excess over $20,000 |

Thus, under Md. Code Ann., Est. & Trusts, sec. 7-601(b), the maximum compensation to which the personal representative of an estate is entitled in order to compensate such representative for all of the ordinary work of administering an estate subject to administration, see <u>Lehman v. Kairys</u>, 142 A.2d 546, 548 (Md. 1958); <u>Talbert v. Reeves</u>, 127 A.2d 533, 538 (Md. 1956), is

determined by reference to the amount of property subject to administration (i.e., probate property).  The parties agree that the value of decedent's probate property as of the date of his death was $500,738.  Under Md. Code Ann., Est. & Trusts, sec. 7-601(b), the maximum amount of commissions allowable to Mr. Tehan, the estate's personal representative, was $19,107,[22] calculated as follows:

$$
\begin{array}{lll}
9\% \times \$20,000 & = & \$1,800 \\
3.6\% \times \$480,738^{23} & = & 17,307 \\
\text{Total} & = & 19,107
\end{array}
$$

The June 29, 2001 order of the Orphans' Court allowed the estate's personal representative commissions of $32,000.  That amount exceeds the maximum amount of commissions allowable under Md. Code Ann., Est. & Trusts, sec. 7-601(b).  We are not required to accept the June 29, 2001 order of the Orphans' Court allowing $32,000 of personal representative's commissions.  Sec. 20.2053-1(b), Estate Tax Regs.

On the record before us, we find that the estate is not entitled to deduct personal representative's commissions in excess of $19,107, the maximum amount of such commissions allow-

[22]Respondent agrees that the maximum amount of commissions allowable under Md. Code Ann., Est. & Trusts, sec. 7-601(b) to Mr. Tehan, the personal representative of the estate, was $19,107.

[23]The value of decedent's probate property reduced by $20,000 is $480,738.

able under Md. Code Ann., Est. & Trusts, sec. 7-601(b).[24]  Respondent appears to acknowledge that, if attorney's fees of $7,500 had not been allowed under Md. Code Ann., Est. & Trusts, sec. 7-602, the estate would have been entitled to deduct under section 2053 that maximum amount of commissions.  However, as we understand respondent's position, Md. Code Ann., Est. & Trusts, sec. 7-602(c), requires that the amount of commissions allowable to a personal representative under Md. Code Ann., Est. & Trusts, sec. 7-601(b), be reduced by the amount of attorney's fees allowed.  Consequently, respondent maintains that the estate is entitled to deduct under section 2053 only $11,607 of personal representative's commissions (i.e., $19,107 (maximum amount of commissions allowable under Md. Code Ann., Est. & Trusts, sec. 7-601(b)) minus $7,500 (attorney's fees allowed under Md. Code Ann., Est. & Trusts, sec. 7-602)).

We reject respondent's interpretation of Md. Code Ann., Est. & Trusts, sec. 7-602(c).  That section provides that if a Maryland court determines to allow attorney's fees, in making that determination "it shall take into consideration * * * what would be a fair and reasonable total charge for the cost of administering the estate * * * and it shall not allow aggregate compensa-

---

[24]On the instant record, we find that the estate has failed to persuade us that the personal representative performed any extraordinary work of administering decedent's probate estate (or nonprobate estate).

tion in excess of that figure." See <u>Wolfe v. Turner</u>, 299 A.2d 106, 109 (Md. 1973); <u>Wright v. Nuttle</u>, 298 A.2d 389, 391 (Md. 1973). Section 7-602(c), Md. Code Ann., Est. & Trusts, does not limit, as respondent appears to argue, the aggregate amount of the commissions allowable to an estate's personal representative and the fees allowable to an estate's attorney to the maximum compensation allowable to such personal representative under Md. Code Ann., Est. & Trusts, sec. 7-601(b).

Respondent determined to allow the estate a deduction under section 2053 of $7,500 for attorney's fees. Respondent does not argue, and the record does not establish, that the aggregate amount of the commissions allowable to the estate's personal representative under Md. Code Ann., Est. & Trusts, sec. 7-601(b) (i.e., $19,107) and the fees allowable to the estate's attorney under Md. Code Ann., Est. & Trusts, sec. 7-602, which respondent allowed the estate to deduct under section 2053 (i.e., $7,500), is not "a fair and reasonable total charge for the cost of administering the estate" of decedent under Md. Code Ann., Est. & Trusts, sec. 7-602(c).[25]

_____

[25]In respondent's reply brief, respondent contends for the first time that petitioner did not demonstrate "that the attorney's fees paid by the estate were for other than routine work of the estate's personal representative." We reject respondent's contention. Respondent allowed the estate to deduct under sec. 2053 $7,500 of attorney's fees. Implicit in respondent's determination to allow such a deduction is respondent's acknowledgment that such attorney's fees are allowable by both Maryland law and
(continued...)

Based upon our examination of the entire record before us, we find that the estate is entitled to deduct under section 2053 personal representative's commissions of $19,107.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

Decision will be entered
under Rule 155.

---

[25](...continued)
Federal law.  To be allowable by Maryland law, the $7,500 of attorney's fees necessarily was for work other than the routine or ordinary work of an executor or administrator in administering an estate.  See Riddleberger v. Goeller, 282 A.2d 101, 107-108 (Md. 1971); Colley v. Britton, 123 A.2d 296, 302-303 (Md. 1956).